123 Cal.Rptr.2d 555 (2002)
100 Cal.App.4th 1266
VILLAGE NURSERIES, L.P., Plaintiff and Appellant,
v.
Martin B. GREENBAUM et al., Defendants and Appellants,
Raymond King et al., Defendants and Respondents.
No. G028121.
Court of Appeal, Fourth District, Division Three.
August 9, 2002.
*557 Hunt, Ortmann, Blasco, Palffy & Rossell and Omel A. Nieves, Pasadena, for Plaintiff and Appellant.
Robie & Matthai, Pamela E. Dunn, Kyle Kveton and Gabrielle M. Jackson, Los Angeles, for Defendants and Appellants Martin B. Greenbaum, Dennis Ferentz and Greenbaum & Ferentz.
Haight, Brown & Bonesteel, Bruce Cleeland, Santa Ana, and Jules S. Zeman, Los Angeles, for Defendant and Respondent Raymond King.
Hollins & Fields, Byron S. Hollins, Howard M. Fields, Encino, and Barton E. De-Bolt for Defendant and Respondent The Coulombe Law Firm.

*556 OPINION
FYBEL, J.
In this legal malpractice action, plaintiff Village Nurseries appeals from a summary judgment entered in favor of defendants Martin Greenbaum, Dennis Ferentz, Greenbaum & Ferentz (collectively the Greenbaum defendants), Raymond King, and The Coulombe Law Firm. The trial court granted the Greenbaum defendants' motion for summary judgment on the ground that plaintiffs claims were barred by the judgmental immunity doctrine. In order to establish judgmental immunity, a defendant must prove (1) the law was unsettled *558 at the time professional advice was rendered, and (2) the advice was based upon the exercise of informed judgment. Because neither the Greenbaum defendants nor The Coulombe Law Firm showed they exercised informed judgment when they rendered professional advice to Village Nurseries, they failed to establish the second prong of the judgmental immunity test and were not entitled to summary judgment on that basis.
The Greenbaum defendants and The Coulombe Law Firm moved for summary judgment on the ground the statute of limitations barred Village Nurseries' claims, but the trial court denied those motions. We conclude Village Nurseries' claims against the Greenbaum defendants and The Coulombe Law Firm were barred by the statute of limitations pursuant to Code of Civil Procedure section 340.6. Therefore, we affirm judgment in their favor.
Village Nurseries retained defendants for legal advice and services regarding perfection of liens on real property. Village Nurseries was actually injured by defendants' alleged malpractice when a bankruptcy trustee asserted a viable argument against the validity of Village Nurseries' liens on the ground they were not properly perfected. Village Nurseries should have discovered the facts constituting defendants' wrongful acts or omissions and their link to the trustee's position when attorney King informed Village Nurseries that (1) its liens may be invalid because a statutory notice had not been served, (2) the trustee argued the liens were unperfected, (3) the judge in the case expressed doubt as to the validity of the liens, and (4) Village Nurseries should look into the possibility of legal malpractice. Section 340.6 was not tolled as to the Greenbaum defendants and The Coulombe Law Firm because their representation of Village Nurseries ceased 17 months before the complaint was filed.
Defendant Raymond King's notices of joinder in the summary judgment motions of the Greenbaum defendants and The Coulombe Law Firm were not motions seeking judgment in favor of King as required by Code of Civil Procedure section 437c. King did not file a separate statement. We therefore reverse the grant of summary judgment in favor of King.

I. FACTS

A. Chronology

Village Nurseries, a landscape and irrigation systems contractor, was retained by Baldwin Building Contractors (Baldwin) to provide services for various properties in Orange and San Diego Counties (the Baldwin projects). In July 1995, Baldwin filed for chapter 11 bankruptcy protection, but its owners continued doing business as debtors in possession. Village Nurseries continued to perform services for the Baldwin projects and recorded several mechanic's liens for amounts owed Village Nurseries in connection with such services.
In August 1995, Village Nurseries retained attorney Raymond King of Coulombe, Kottke & King for legal advice regarding the ramifications of the Baldwin bankruptcy and its impact on Village Nurseries' ability to collect receivables on the Baldwin projects. In September 1995, Tom House, president of Village Nurseries, wrote a letter to King, stating, "I am concerned about the cost of perfecting the recorded liens we have against Baldwin work. We were told by one of our suppliers that they were able to inexpensively accomplish this through a service that filed 'Notices of Perfection of Security Interest' with the Bankruptcy Court per Section Code 546." House was referring to a notice pursuant to the Bankruptcy Code under *559 title 11 United States Code section 546(b) (section 546(b)), which has been interpreted to provide "where state law requires 'commencement of an action to accomplish ... perfection, or maintenance or continuation of perfection of an interest in property' and the action has not been commenced prepetition, `perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for ... such commencement.'" (In re Baldwin Builders (9th Cir.BAP 1999) 232 B.R. 406, 410-411.)
King responded to House by letter dated October 3, 1995, which stated, "In response to your inquiry regarding a cost effective means of perfecting mechanics liens, I do not believe the Bankruptcy Code Section 546 procedure outlined in your September 22, 1995 letter will be effective. To my knowledge, that Section provides a means for notifying parties in a bankruptcy that a lien is claimed. However, I believe that the only means to perfect a mechanic's lien is to file suit in the appropriate state court in the county where the property is located." (Italics omitted.)
In October 1995, Village Nurseries retained the Greenbaum defendants to perfect various mechanic's liens previously filed by Village Nurseries on the Baldwin projects. After advising House that filing foreclosure lawsuits would perfect Village Nurseries' liens, the Greenbaum defendants filed complaints to foreclose on the mechanic's liens in Orange and San Diego Counties (the foreclosure actions), but did not serve the complaints or otherwise prosecute the actions because of the automatic stay imposed by the Baldwin's pending bankruptcy action. On January 26, 1996, Village Nurseries filed a proof of claim in the Baldwin bankruptcy, which listed its mechanic's liens with a total value of $1,128,733.76.
Village Nurseries continued to perform work for Baldwin through May 1996. In June 1996, Baldwin was removed as debtor in possession and a trustee (the Trustee) was appointed. Shortly thereafter, the bankruptcy court approved an allocation order including a procedure to pay the secured creditors in the Baldwin bankruptcy. The Trustee also submitted a joint plan of reorganization, providing that mechanic's lienholders, including Village Nurseries, were considered secured creditors and would be paid on a periodic basis.
About the same time, Village Nurseries rehired King as its bankruptcy law specialist to address the ongoing issues of the maintenance and perfection of its mechanic's liens. In July 1996, King and Coulombe, Kottke & King terminated their professional affiliation with each other. King set up his own practice and took the Village Nurseries file with him. At some point thereafter, Coulombe, Kottke & King became The Coulombe Law Firm. On August 16, 1996, the Greenbaum defendants were formally substituted out as counsel for Village Nurseries, and Raymond King was substituted in as counsel in the foreclosure actions.
The Trustee filed a motion to transfer Baldwin's Toyon Park property to the City of Anaheim free and clear of hens. King opposed the motion on behalf of Village Nurseries, arguing this transfer did not adequately protect the interests of Village Nurseries as a lienholder on that property. At the hearing on the motion on August 30, 1996, the Trustee argued it appeared Village Nurseries failed to file a section 546(b) notice regarding its liens and if it failed to do so, its "lien is history." Judge Riblet granted the Trustee's motion.
Judge Riblet stated she had "serious doubts" whether Village Nurseries' liens on the property were properly perfected, the Trustee's motion to transfer Toyon *560 Park was "rather urgent," and Village Nurseries would not be harmed by the transfer because the Trustee was required to provide replacement liens for disenfranchised lienholders. Judge Riblet declined to rule on the validity of Village Nurseries' liens because that issue was not before the court and required additional legal research. The same day, King contacted House and advised him that Village Nurseries should immediately refile its liens on Toyon Park so King could file a section 546(b) notice. Village Nurseries refiled its liens later that afternoon, but the refiling was untimely.
According to Village Nurseries' verified interrogatory responses, in early September 1996, King and House discussed Judge Riblet's statement doubting the liens' validity. During this discussion, King expressed "the gravity of the judge's statement," suggested Village Nurseries consider obtaining another attorney due to King's lack of success and rapport with Judge Riblet, and stated Village Nurseries "may want to look into the possibility of malpractice given the judge's statement re: our lien status." King also told House that in his view the steps already taken to perfect the liens were appropriate and Village Nurseries would eventually prevail.
On October 3, 1996, King sent House a letter stating that during the August 30 hearing (1) the Trustee argued that Village Nurseries' hens were unperfected and (2) Judge Riblet questioned the validity of the liens, expressing her view that the filing of foreclosure actions was insufficient to perfect lien interests. In his letter, King expressed his concern that "the claims of Village Nurseries are being targeted for exclusion from payment on a theory that they are unperfected lien claims."
Pursuant to the allocation order, Village Nurseries received payments on certain of its Baldwin projects liens from October 3, 1996 through September 30, 1997. However, there is no evidence that Village Nurseries received any payments related to its Toyon Park liens after August 30, 1996.
By mid-1997, Village Nurseries had not been provided any replacement liens. In May 1997, Village Nurseries filed a motion to compel the Trustee to comply with the court's order. The motion was heard on September 22, 1997, at which time the court denied the motion on the ground that Village Nurseries' liens were invalid because Village Nurseries failed to serve a section 546(b) notice required to perfect its mechanic's liens on Toyon Park.
Four months later, on January 16, 1998, Village Nurseries filed its complaint for legal malpractice. Village Nurseries also filed an appeal of Judge Riblet's September 22, 1997 decision with the United States Bankruptcy Appellate Panel. On March 12, 1999, the appellate panel affirmed Judge Riblet's ruling, holding that Village Nurseries' mechanic's liens were invalid because (1) its foreclosure complaints were void as violations of the automatic stay and (2) Village Nurseries failed to satisfy the notice requirements of section 546(b). (In re Baldwin Builders, supra, 232 B.R. at pp. 415-416.)

B. The Summary Judgment Motions

In March 2000, the Greenbaum defendants filed a motion for summary judgment based on judgmental immunity and the statute of limitations. The Coulombe Law Firm then filed a motion for summary judgment on statute of limitations and vicarious liability grounds. On March 13, 2000, King served notices of joinder in the Greenbaum defendants' and The Coulombe Law Firm's motions for summary judgment. The trial court denied the motions on statute of limitations grounds, explaining, *561 "I didn't think that the plaintiffs interrogatory response conclusively established knowledge as of August 30th, 1996, because the plaintiff indicated that it was awaiting a ruling by the bankruptcy court, and that came later." The trial court also denied The Coulombe Law Firm's motion based on the argument it was not vicariously liable for defendant King's conduct.
After the parties filed supplemental briefs on the issue of judgmental immunity at the court's request, the trial court granted King's request for joinder in the Greenbaum defendants' motion and granted the Greenbaum defendants' motion on the grounds of judgmental immunity. Citing cost efficiency reasons, Village Nurseries stipulated at the hearing to an order granting judgment in favor of The Coulombe Law Firm on judgmental immunity grounds as well, even though The Coulombe Law Firm moved for summary judgment on other grounds and did not otherwise join in the Greenbaum defendants' motion.
Village Nurseries appealed. The Greenbaum defendants cross-appealed on the ground the trial court should have also granted their summary judgment motion on the statute of limitations ground.

II. DISCUSSION

A. Standard of Review

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has `shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings ... but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action....' [Citations.]" (Merrill v. Navegar, Inc. (2001) 26 Cal.4th 465, 476-77, 110 Cal.Rptr.2d 370, 28 P.3d 116.)
"To speak broadly, all of the foregoing discussion of summary judgment law in this state, like that of its federal counterpart, may be reduced to, and justified by, a single proposition: If a party moving for summary judgment in any action ... would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment." (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 855, 107 Cal.Rptr.2d 841, 24 P.3d 493.)

B. Appealability of Judgment
The court's June 27, 2000 order reflects its grant of summary judgment in favor of all defendants; however, the judgment signed by the court the same day erroneously omitted The Coulombe Law Firm. On October 3, 2000, the court signed an amended judgment, clarifying judgment had been rendered in favor of all defendants, including The Coulombe Law Firm. The Coulombe Law Firm points out Village Nurseries' notice of appeal states that it appeals from the June 27, 2000 judgment. The Coulombe Law Firm argued the judgment expressly rendered in its favor on October 3, 2000 is not before this court. The Coulombe Law Firm then addressed the merits of the appeal.
"The reviewing court may treat a notice of appeal filed after the superior court has *562 announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." (Cal. Rules of Court, rule 2(d)(2).) Pursuant to rule 2(d)(2), we treat plaintiffs notice of appeal as filed immediately after entry of the amended judgment as to all defendants, including The Coulombe Law Firm. (Lee Newman, M.D., Inc. v. Wells Fargo Bank (2001) 87 Cal.App.4th 73, 78, 104 Cal.Rptr.2d 310.)

C. Defendants Were Not Entitled to Summary Judgment on the Ground of Judgmental Immunity
Village Nurseries contends the trial court erred in granting summary judgment based on the judgmental immunity doctrine. The doctrine immunizes attorneys from liability "resulting from an honest error in judgment concerning a doubtful or debatable point of law." (Davis v. Damrell (1981) 119 Cal.App.3d 883, 887, 174 Cal.Rptr. 257.) "[T]he controlling test [for judgmental immunity] invokes a two-pronged inquiry: (1) whether the state of the law was unsettled at the time the professional advice was rendered; (2) and whether that advice was based upon the exercise of an informed judgment." (Ibid.)
Village Nurseries directs its challenge to the first prong of the test, arguing the state of the law was not unsettled at the time defendants advised Village Nurseries about perfecting its mechanic's liens after Baldwin filed for bankruptcy protection. The parties cited authorities showing the extent to which the law was settled or unsettled during the relevant time period. We need not decide, however, whether defendants satisfied the first prong of the judgmental immunity test because they failed to establish the second prong that they exercised informed judgment at the time they advised Village Nurseries.
In Smith v. Lewis (1975) 13 Cal.3d 349, 118 Cal.Rptr. 621, 530 P.2d 589, the California Supreme Court explained that the judgmental immunity doctrine does not apply unless an attorney establishes both (1) the unsettled state of the law that was the subject of professional advice and (2) the attorney's efforts to perform "reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem." (Id. at p. 359, 118 Cal.Rptr. 621, 530 P.2d 589.)[1] Thus, in determining whether to grant summary judgment based on the judgmental immunity doctrine, it is "[a]n attorney who has conducted a `thorough, contemporaneous research effort,' demonstrated `detailed knowledge of legal developments and debate in the field,' and made a decision which represented a `reasoned exercise of an informed judgment grounded upon a professional evaluation of applicable legal principles,' [who] may be entitled to judgment as a matter of law." (Stanley v. Richmond, supra, 35 Cal.App.4th 1070, 1094, 41 Cal. Rptr.2d 768.)
In Aloy v. Mash, supra, 38 Cal.3d 413, 212 Cal.Rptr. 162, 696 P.2d 656, our Supreme Court reversed a grant of summary *563 judgment based on defendant's failure to establish the second prong of the judgmental immunity test, holding, "Defendant, by contrast, relied on a single case ... for the proposition that a nonmatured military pension was not subject to division on dissolution .... [¶] In sum, this is not a case where the defendant attorney, basing his judgment on all available data, made a rational professional judgment not to claim an interest in the husband's pension. Rather, he acted more precisely, failed to act on an incomplete reading of a single case, without appreciating the vital difference between a member of the armed forces who has not yet served long enough to be eligible to retire and one who has but chooses to stay in the service.... [¶] In sum, the record on which the motion for summary judgment was argued presented a triable issue of negligence." (Id. at pp. 418-419, 212 Cal.Rptr. 162, 696 P.2d 656.)
Here, the Greenbaum defendants' and The Coulombe Law Firm's separate statements do not address whether they performed any legal research or considered any particular authorities before advising Village Nurseries. The record is also silent regarding defendants' experience in this area of the law. Defendants do not present any evidence establishing the second prong of the test but merely conclude in their briefs it has been satisfied.
Defendants argue because their conduct was consistent with treatises, it necessarily follows their actions were based on informed judgment. We disagree. They wrongly suggest that once the first prong is established, the second prong of the judgmental immunity test is no longer required or is automatic. Defendants must establish not only that the law was unsettled, but also that they conducted sufficient research and analysis to exercise informed judgment.
On the one hand, defendants suggest because there was no Ninth Circuit law on the subject of section 546(b) notices in the context of perfecting mechanic's liens at the time they advised Village Nurseries, there was nothing to research before exercising informed judgment. On the other hand, defendants cite cases and treatises which, they argue, support their interpretation of the law. Defendants hoist themselves on their own petard: They establish by their own argument the existence of relevant authorities they could have consulted before exercising judgment.
We disagree with defendants' contentions that King's October 3, 1995 letter to House, stating that section 546(b) procedures would not perfect Village Nurseries' mechanic's liens, indicates King was exercising informed judgment. Neither King's letter nor any evidence in the record reveals King performed any researchor any defendant relied on any research regarding this issue at the time King rendered his advice to Village Nurseries in October 1995. King cited Marsh, California Mechanics' Lien Law in support of his interpretation of section 546(b) during the August 30, 1996 hearing before Judge Riblet; however, King's reference to an authority almost one year later does not establish an exercise of informed judgment at the time he advised Village Nurseries in 1995.
Defendants also argue plaintiff failed to set forth in its separate statement any evidence showing the attorneys did not do what the treatises advised and "did not draw upon their knowledge, skill, experience, training, and general understanding of the law." But defendants moved for summary judgment in this case, and thus it is their burden to show Village Nurseries cannot establish its cause of action against themnot the other way around. Code of Civil Procedure section 437c, subdivision *564 (o)(2) provides, in part: "A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Italics added.) Because defendants failed to introduce any evidence supporting the second prong of the judgmental immunity doctrine, the burden never shifted to Village Nurseries to show that a triable issue of fact exists on this point.
We conclude summary judgment should not have been granted based on judgmental immunity. Therefore, we need not address Village Nurseries' arguments that the doctrines of collateral estoppel and judicial estoppel also preclude judgment by application of the judgmental immunity doctrine. For the same reason, we need not address Village Nurseries' objections to evidence presented by defendants in support of their motions for summary judgment based on a judgmental immunity theory.

D. Village Nurseries' Claims Against the Greenbaum Defendants and The Coulombe Law Firm Are Barred by the Statute of Limitations of Code of Civil Procedure Section 3-0.6

1. Code of Civil Procedure section 340.6, subdivision (a) and Village Nurseries' contentions
"[E]ven if summary judgment was granted on an incorrect basis, we must affirm if it would have been proper on another ground." (Barkley v. City of Blue Lake (1996) 47 Cal.App.4th 309, 313, 54 Cal.Rptr.2d 679.) Thus, we next consider whether the trial court should have granted the motions for summary judgment on statute of limitations grounds.
The statute of limitations for claims of legal malpractice is set forth in Code of Civil Procedure section 340.6. In relevant part, Code of Civil Procedure section 340.6, subdivision (a) provides: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred...."
Village Nurseries argues its claims are not time-barred because: (1) it did not sustain actual injury as a result of defendants' alleged wrongful acts or omissions until September 1997 when the bankruptcy court determined its liens were invalid; (2) a triable issue of fact exists regarding when it discovered or reasonably should have discovered defendants' alleged wrongful acts or omissions in light of King's assurances that Village Nurseries' liens were properly perfected; and (3) the statute was tolled because a triable issue of fact exists as to whether defendants continued to represent Village Nurseries. We disagree with these arguments as they relate to the Greenbaum defendants and The Coulombe Law Firm.

*565 2. Village Nurseries sustained actual injury as a result of defendants' alleged malpractice no later than August 30,1996
There is no bright-line rule to apply in determining when actual injury has occurred within the meaning of Code of Civil Procedure section 340.6. (Adams v. Paul (1995) 11 Cal.4th 583, 588, 46 Cal.Rptr.2d 594, 904 P.2d 1205.) "Instead, actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission." (Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison (1998) 18 Cal.4th 739, 761, 76 Cal.Rptr.2d 749, 958 P.2d 1062, fn. 9 (Jordache).) Although it is well settled that "determining when actual injury occurred is predominantly a factual inquiry[,] ... [w]hen the material facts are undisputed, the trial court can resolve the matter as a question of law in conformity with summary judgment principles." (Id, at p. 751, 76 Cal.Rptr.2d 749, 958 P.2d 1062.)
Our Supreme Court explained in Jordache, supra, 18 Cal.4th 739, 76 Cal. Rptr.2d 749, 958 P.2d 1062, that in determining actual injury, "[t]he inquiry necessarily is more qualitative than quantitative because the fact of damage, rather than the amount, is the critical factor." (Id. at p. 752, 76 Cal.Rptr.2d 749, 958 P.2d 1062.) Although "[t]he mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harmnot yet realized" does not constitute actual injury under the statute, "actual injury may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy." (Id. at p. 750, 76 Cal.Rptr.2d 749, 958 P.2d 1062.)
In Jordache, plaintiff alleged that defendant committed malpractice by failing to advise plaintiff to tender a complaint filed against it to its insurance carrier. (Jordache, supra, 18 Cal.4th at p. 746, 76 Cal. Rptr.2d 749, 958 P.2d 1062.) As a result of defendant's omission, significant time passed before plaintiff tendered the complaint to the insurer. (Id, at p. 745, 76 Cal.Rptr.2d 749, 958 P.2d 1062.) The insurance carrier argued that plaintiffs late tender relieved its obligation to provide benefits. (Ibid.) Plaintiff initiated litigation against the insurer regarding the coverage issue and the viability of the insurer's late tender defense. (Ibid.) Plaintiff did not file its professional malpractice claim against defendant until after resolution of the coverage litigation. (Id, at p. 746, 76 Cal.Rptr.2d 749, 958 P.2d 1062.)
In evaluating when actual injury occurred under Code of Civil Procedure section 340.6, our Supreme Court in Jordache concluded that in addition to incurring legal fees to prosecute the coverage dispute, defendant's "alleged omissions also gave the insurers an objectively viable defense" (Jordache, supra, 18 Cal.4th at p. 761, 76 Cal.Rptr.2d 749, 958 P.2d 1062) which consequently "reduced those [insurance] claims' settlement value" (id. at p. 743, 76 Cal.Rptr.2d 749, 958 P.2d 1062). Because the insurer's objection rendered plaintiffs claims immediately less valuable than they were prior to the assertion of such defense and because the defense arose as a result of plaintiffs counsel's omission, plaintiff was actually injured within the meaning of section 340.6 at the time the insurer's defense was asserted. (Id. at pp. 743-744, 76 Cal.Rptr.2d 749, 958 P.2d 1062.) It does not matter whether a plaintiff is able to quantify the amount by which its claims were devalued at the time such a defense accrued and was asserted because "actual injury ... may well precede quantifiable financial costs." (Adams v. Paul, supra, 11 Cal.4th at p. 591, fn. 5, 46 Cal.Rptr.2d 594, 904 P.2d 1205.)
Here, defendants failed to advise Village Nurseries in 1995 that a section 546(b) *566 notice was necessary to perfect and maintain its mechanic's liens on Toyon Park and other Baldwin properties. At the August 30, 1996 hearing on the Trustee's motion to transfer Toyon Park, the Trustee questioned the validity of Village Nurseries' interests in Toyon Park and asserted the objectively viable argument that Village Nurseries' liens were not perfected due to the lack of a section 546(b) notice. Judge Riblet expressed her doubt the liens were perfected without the section 546(b) notice. Following the reasoning in Jordache, the settlement value of Village Nurseries' claims for payment on its liens was reduced and thus impaired at the moment the Trustee questioned the validity of the liens on August 30. The Trustee's position was asserted as a result of defendants' failure to perfect Village Nurseries' mechanic's liens on Toyon Park. Therefore, Village Nurseries sustained actual injury as a result of that act or omission no later than August 30, 1996.
In light of the foregoing, we reject Village Nurseries' argument that it did not sustain actual injury until the bankruptcy court ruled that the liens were invalid in September 1997. As discussed in Jordache, a plaintiff need not suffer a complete loss of a right or reach final adjudication of an issue to sustain actual injury pursuant to Code of Civil Procedure section 340.6. (Jordache, supra, 18 Cal.4th at pp. 750, 753, 76 Cal.Rptr.2d 749, 958 P.2d 1062["[T]he result of Jordache's coverage litigation could only confirm, but not create, Jordache's actual injuries from the late tender of the [complaint to the insurer]. Jordache's right to an insurer-funded defense existed or not when that action first embroiled Jordache. The right to that insurance benefit, the impairment of that right, and Jordache's expenditures while that right was unavailable, did not arise for the first time when Jordache settled with the insurers"].)
We also reject Village Nurseries' contention that it sustained only speculative harm until September 1997 because it received various payments from the Trustee as a secured lienholder following the August 30, 1996 hearing. Village Nurseries did not show it received any payment related to its Toyon Park liens from the Trustee after August 30, 1996. In fact, its own verified interrogatory responses show the opposite, stating Village Nurseries "received approximately $80,000.00 against other liened projects," thereby indicating Village Nurseries was not paid on its Toyon Park liens. (Italics added.)
We conclude that Village Nurseries sustained actual injury within the meaning of Code of Civil Procedure section 340.6 no later than August 30, 1996.

3. Village Nurseries reasonably should have discovered the facts constituting defendants' alleged wrongful acts or omissions no later than October 1996
Village Nurseries argues that the statute of limitations did not begin to run on its malpractice claims against defendants until Judge Riblet's September 1997 ruling invalidated its Toyon Park liens. Village Nurseries contends it did not discover and should not have discovered the facts constituting defendants' wrongful acts or omissions until then.
"Under Code of Civil Procedure section 340.6, ... the one-year period is triggered by the client's discovery of `the facts constituting the wrongful act or omission,' not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts. `It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action.'" (Worton v. *567 Worton (1991) 234 Cal.App.3d 1638, 1650, 286 Cal.Rptr. 410.)
Village Nurseries retained King for advice regarding perfecting and maintaining its mechanic's lien interests in the Baldwin projects and to "protect and preserve those interests." Village Nurseries retained the Greenbaum defendants to perfect its mechanic's liens. The wrongful acts or omissions alleged by Village Nurseries in its complaint were defendants' failures to properly advise Village Nurseries and otherwise perfect its mechanic's liens. The uncontradicted evidence shows that at a minimum, no later than October 1996, Village Nurseries constructively discovered the facts underlying the defendants' wrongful acts or omissions and their link to the Trustee's position that the liens were unperfected and invalid.
In September 1995, House wrote a letter to King asking about section 546(b) notices with regard to perfecting Village Nurseries' mechanic's liens. King replied that section 546(b) notices are not effective to perfect mechanic's liens"I do not believe the Bankruptcy Code Section 546 procedure outlined in your September 22, 1995 letter will be effective." Instead, King advised, "the only means to perfect a mechanic's lien is to file suit...." Village Nurseries retained the Greenbaum defendants to file foreclosure lawsuits in an effort to perfect its mechanic's liens.
After the August 30, 1996 hearing, King contacted House and requested that Village Nurseries immediately refile its Toyon Park liens so that King could file a section 546(b) notice to ensure the liens' validity. Village Nurseries refiled its liens later that same afternoon, but the filing was untimely.
King informed House in September and October of 1996 that Village Nurseries' liens on Toyon Park may not have been properly perfected by defendants. In its interrogatory responses verified by House, Village Nurseries specifically admitted, "In a phone conversation with Mr. King on September 4,1996, he suggested the gravity of the judge's statement re: the validity of the liens, and that we should consider looking for another attorney to handle the case, and we may want to consider consulting another attorney re: what had been done to date." In another verified interrogatory response, Village Nurseries stated that in early September 1996, "Mr. King said we should consider obtaining another attorney for the case due to his lack of success/rapport with Judge Riblet. Additionally, he stated that Village may want to look into the possibility of malpractice given the judge's statement re: our lien status." (Italics added.)
Additional notice of defendants' wrongful acts or omissions was contained in a follow-up letter from King to House, which House admitted was sent to him "[o]n or about October 3, 1996." In that letter, King stated, in part: "As you know, at the hearing on August 30, 1996, Judge Riblet of the Bankruptcy Court granted the Trustee's motions including the motion to transfer the Toyon Park property free and clear of mechanic's liens. While the Trustee's attorney made an argument that Village Nurseries mechanic's lien claims are unperfected, that was not the basis for the Court's ruling. She specifically found that all mechanic's lien claims were `adequately protected' by a replacement lien on the surrounding homes. However, the Court did note that she followed a view of the law that perfection of the mechanic's liens under state law by filing suit might be insufficient and a violation of the Automatic Stay of the Bankruptcy Code. At least one well-known authority (Marsh on Mechanic's Liens) takes a different view which view has been upheld in cases from other circuits. [¶] Of primary concern to *568 Village Nurseries and to us is whether or not the claims of Village Nurseries are being targeted for exclusion from payment on a theory that they are unperfected lien claims." (Italics added.) As King suggested, Village Nurseries retained Karen Grant as bankruptcy counsel in December 1996.
The uncontradicted evidence, including several admissions under oath, shows that Village Nurseries was on notice of the facts constituting defendants' wrongful acts or omissions no later than October 1996. Defendants were retained for legal advice and services regarding perfection of Village Nurseries' mechanic's liens. From September through October 1996, King informed Village Nurseries that: (1) its liens may be invalid because a section 546(b) notice was not served; (2) the Trustee argued the liens were unperfected; (3) the judge doubted the validity of the liens and noted that Village Nurseries' foreclosure actions may be insufficient for perfection and in violation of the Bankruptcy Code; and (4) in light of those comments, Village Nurseries should look into the possibility of legal malpractice and may want to obtain another attorney to review what had been done to date. In view of this evidence, at a minimum, no later than October 1996, Village Nurseries should have discovered the facts constituting defendants' wrongful acts or omissions (the failure to file the section 546(b) notice and advice and actions related thereto) and their link to the actual injury (the Trustee's questioning of the validity of Village Nurseries' liens). Because we conclude that Village Nurseries should have discovered such facts in October 1996, we do not decide when Village Nurseries actually discovered them.
Village Nurseries contends the statute did not begin to run in October 1996, arguing that at the same time King disclosed the facts constituting defendants' wrongful acts or omissions, he also stated his view that the liens had been properly perfected. But the language of Code of Civil Procedure section 340.6 is clear. Absent an applicable exception to the rule, the statute begins to run at the time a plaintiff discovers or should have discovered the facts constituting the wrongful act or omission. King's statements of optimism did not eliminate the information disclosed by King and the conduct and words of Judge Riblet and the Trustee.
Code of Civil Procedure section 340.6, subdivision (a)(3) provides that the statute is tolled when "the attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney...." There is no evidence defendants concealed any fact from Village Nurseries.
Thus, Village Nurseries reasonably should have discovered the facts constituting defendants' wrongful acts or omissions no later than October 1996.

4. The Greenbaum defendants and The Coulombe Law Firm ceased to represent Village Nurseries before the August 30, 1996 hearing
Village Nurseries argues the statute of limitations of Code of Civil Procedure section 340.6, subdivision (a)(2) was tolled because "Respondents continued to represent Village Nurseries on Village Nurseries' Mechanic's Liens until late 1997."
Village Nurseries offered no evidence showing the date the Greenbaum defendants or The Coulombe Law Firm ceased representing Village Nurseries. But the evidence shows that in August 1996, the Greenbaum defendants were substituted out as counsel for Village Nurseries in the foreclosure actions they originally filed on behalf of Village Nurseries. There is no *569 evidence the Greenbaum defendants thereafter represented Village Nurseries in any capacity.
The uncontradicted evidence also shows The Coulombe Law Firm ceased to represent Village Nurseries after July 1996. Specifically, Ronald B. Coulombe's declaration states that Coulombe, Kottke & King (soon to be The Coulombe Law Firm) ceased performing any services for Village Nurseries after King and the law firm terminated their relationship in July 1996 and King established his own law practice and took the Village Nurseries file with him. The Coulombe Law Firm's evidence on this point is unrefuted. Village Nurseries admitted in a verified special interrogatory response that it "is unclear as to the actual date that the firm of Coulombe, Kottke & King stopped providing services to Village Nurseries."
We therefore conclude that neither the Greenbaum defendants nor The Coulombe Law Firm represented Village Nurseries after August 1996.

5. Conclusion regarding summary judgment and Code of Civil Procedure section 3-0.6, subdivision (a) regarding the Greenbaum defendants and The Coulombe Law Firm
Village Nurseries sustained actual injury on August 30, 1996 and reasonably should have discovered the facts constituting defendants' wrongful acts or omissions in October 1996. Therefore, the statute of limitations began to run in October 1996 unless tolled. The statute was not tolled on the ground of continuous representation as to the Greenbaum defendants and The Coulombe Law Firm because they ceased to represent Village Nurseries by August 1996. Accordingly, pursuant to Code of Civil Procedure section 340.6, the statute of limitations on Village Nurseries' legal malpractice claims against the Greenbaum defendants and The Coulombe Law Firm expired in October 1997. Village Nurseries did not file its lawsuit based on such claims until January 1998. Therefore, its claims as to the Greenbaum defendants and The Coulombe Law Firm are barred by the statute of limitations. Summary judgment should have been granted in favor of the Greenbaum defendants and The Coulombe Law Firm on that basis.

E. The Court Could Not Enter Judgment For King Based on, His Joinders in The Coulombe Law Firm's and the Greenbaum Defendants' Motions for Summary Judgment
"Subdivision (b) of [Code of Civil Procedure] section 437c states that a party moving for summary judgment or summary adjudication must support the motion with affidavits and other discovery materials. `The supporting papers shall include a separate statement setting forth plainly and concisely all material facts which the moving party contends are undisputed.' [Citations.]" (Frazee v. Seely (2002) 95 Cal.App.4th 627, 636, 115 Cal. Rptr.2d 780.)
King never filed a motion for summary judgment in his favor or a separate statement in support of such a motion. Instead, King served notices that he intended to join in the Greenbaum defendants' motion and in The Coulombe Law Firm's motion. King's notice of joinder in the Greenbaum defendants' motion stated in its entirety "Comes now, Defendant, Raymond King doing business as King & Associates herein and joins Defendants Martin B. Greenbaum, Greenbaum and Ferentz and Dennis Ferentz's Motion for Summary Judgment set for April 6, 2000 at 9:00 a.m. in Department C10 of the above entitled Court." King's notice of joinder in The Coulombe Law Firm's motion was virtually identical.
King's notices of joinder failed to constitute a motion for summary judgment in *570 his favor pursuant to Code of Civil Procedure section 437c. Although King filed a reply brief and a supplemental brief in support of the Greenbaum defendants' and The Coulombe Law Firm's motions, neither constitutes a motion made by King.
At oral argument, King's counsel contended that Village Nurseries stipulated to judgment in favor of King at the hearing on the motions for summary judgment. But the record shows that Village Nurseries stipulated to the entry of judgment in favor of The Coulombe Law Firm on the ground of judgmental immunity after the court granted the Greenbaum defendants' motion and King's request for joinder. Village Nurseries did not stipulate to judgment entered in favor of King.
King did not move for summary judgment in his favor or file a separate statement as required by Code of Civil Procedure section 437c. Therefore, the trial court erred in granting summary judgment in favor of King. We do not decide whether King would prevail on a motion for summary judgment were he to file one.

DISPOSITION
The judgment in favor of the Greenbaum defendants and The Coulombe Law Firm is affirmed. The judgment as to King is reversed. The Greenbaum defendants and The Coulombe Law Firm shall recover their costs on appeal. King shall bear his own costs on appeal. Village Nurseries shall bear its own costs on appeal as to King.
WE CONCUR: SILLS, P.J., and ARONSON, J.
NOTES
[1] In addition to setting forth the two-pronged test for judgmental immunity, the Supreme Court in Smith also stated nonvested pension rights were not community property. (Smith v. Lewis, supra, 13 Cal.3d 349, 355, 118 Cal. Rptr. 621, 530 P.2d 589.) Smith's holding pertaining to nonvested pensions was subsequently overruled in In re Marriage of Brown (1976) 15 Cal.3d 838, 851, footnote 14, 126 Cal.Rptr. 633, 544 P.2d 561. Smith continues to be relied upon for its analysis of the judgmental immunity doctrine. (E.g., Aloy v. Mash (1985) 38 Cal.3d 413, 417, 212 Cal. Rptr. 162, 696 P.2d 656; Stanley v. Richmond (1995) 35 Cal.App.4th 1070, 1092, 41 Cal. Rptr.2d 768.)