Filed 2/16/16 Patriot Cleaning Services v. Certain Underwriters at Lloyd's, London CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PATRIOT CLEANING SERVICES, INC., | |
| Plaintiff and Appellant, | G050601 |
| v. | (Super. Ct. No. 30-2013-00645426) |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Kirk H. Nakamura, Judge. Affirmed.

Law Offices of Robert K. Scott, Newmeyer & Dillion and Robert K. Scott for Plaintiff and Appellant.

Wilson Elser Moskowitz Edelman & Dicker, William K. Enger, Arlene N. Hoang and Jamie N. Furst for Defendant and Respondent.

\*          \*          \*

## INTRODUCTION

Plaintiff Patriot Cleaning Services, Inc. (Patriot), was the named insured under a commercial general liability policy issued by defendant Certain Underwriters at Lloyd's, London (Underwriters). The policy excluded from coverage "a 'loss' caused by or resulting from the theft from any unattended vehicle" unless, inter alia, "there are visible signs that the theft was the result of forced entry."

Patriot's president stated Patriot's van had disappeared. He reported that the van—with its doors unlocked and a window open—was found in a nearby city. He claimed that $35,000 of equipment that had been inside the van was missing. It is undisputed there were no visible signs the theft of the equipment was the result of forced entry—there was no evidence of forced entry at all.

After Underwriters denied coverage under the exclusion for Patriot's claim for the loss of the equipment, Patriot sued Underwriters for breach of contract and breach of the implied covenant of good faith and fair dealing. The trial court granted Underwriters's motion for summary judgment.

Based on the record before us, we must affirm. There is simply no evidence of visible signs that the theft of any equipment was the result of forced entry and no evidence upon which a reasonable inference could be made of any signs of forced entry. Indeed, the record shows Patriot's president admitted that the van showed no visible signs of forced entry. In the absence of any evidence upon which a reasonable trier of fact could find the exclusion inapplicable, summary judgment was properly granted.

## SUMMARY OF FACTS

Patriot is a carpet, upholstery, and janitorial cleaning business in Orange County. Bruce Nihan is Patriot's president. Patriot used a 2005 Ford E-250 cargo van in

2

which equipment and tools were kept. The equipment and tools included a mounted Prochem Everest steam machine, cleaning tools, brushes, and vacuums.

Patriot was a named insured under commercial general liability policy No. 0L5420, issued by Underwriters, which was effective from December 29, 2011 to December 29, 2012 (the policy). The policy contained a locked vehicle conditional exclusion, stating: "We will not pay for a 'loss' caused by or resulting from the theft from any unattended vehicle unless at the time of theft its windows, doors and compartments were closed and locked and there are visible signs that the theft was the result of forced entry."

Nihan was out of town from the evening of November 21, 2012 until the morning of November 26, 2012. He reported that sometime during that period, Patriot's van was stolen from its parked location on the street outside of Nihan's then residence in Laguna Hills.

On November 27, 2012, "'Monroe' Pendar Fazeli" found the van in a lot near his Irvine business. The van's window was rolled down and the driver's side door was unlocked. Fazeli found an invoice inside the van, which had Nihan's contact information; he contacted Nihan.

When Nihan recovered the van, he saw there were no broken windows nor any cut wires around the ignition or any damage to the ignition area. There was no evidence the door locks or the steering column was broken. Equipment and tools, which Nihan valued at approximately $35,000, were missing from the van.

The Irvine Police Department was contacted and a police report was prepared, which stated in part: "There was no sign of forced entry into the van or on the steering column. When the van was found the driver's door and rear double doors were unlocked. The two right side doors were locked." (Some capitalization omitted.)

Patriot submitted a claim under the policy to Underwriters, in which Patriot sought coverage for the approximately $35,000 worth of equipment and tools. During

Underwriters's investigation of Patriot's claim, Nihan provided a recorded statement, stating he had no idea how the thieves entered the van, and acknowledging the van did not show any signs of forcible entry.

Patriot was advised that Underwriters denied coverage for the claim, based on the policy's "Locked Vehicle Conditional Exclusion." Underwriters's coverage denial letter stated that it had been determined there were no signs of forced entry into the van, and, thus, the exclusion applied and, consequently, Underwriters was unable to extend coverage for the loss.

PROCEDURAL BACKGROUND

Patriot filed a complaint containing claims for breach of contract and breach of the covenant of good faith and fair dealing against Underwriters, and a claim for professional negligence against E Business Insurance Pros and CK Specialty Insurance Associates.[1] Underwriters filed an answer to the complaint, which included, inter alia, an affirmative defense that the policy's "Locked Entry Conditional Exclusion" barred coverage for Patriot's claim and also included, as to the breach of implied covenant and fair dealing claim, an affirmative defense that there had been a "legitimate coverage dispute between the parties."

Underwriters filed a motion for summary judgment on the ground, "[t]here is no controversy to be determined in that Underwriters had no duty to indemnify [Patriot] under the subject insurance policy for the alleged theft of equipment from [Patriot]'s vehicle since coverage was precluded under the Locked Vehicle Conditional Exclusion in the Policy. Accordingly, Underwriters' coverage position was reasonable

---

[1] In its opening brief, Patriot states the trial court granted CK Specialty Insurance Associates's motion for summary judgment and Patriot is not appealing that ruling. Patriot further states that E Business Insurance Pros is "no longer in the case." We therefore do not further address either E Business Insurance Pros or CK Specialty Insurance Associates.

4

under the circumstances. Underwriters therefore cannot be liable to [Patriot] for 'insurance bad faith.' As such, summary judgment should be granted to Underwriters as a matter of law."

Patriot opposed the motion for summary judgment. In Patriot's responsive separate statement, Patriot asserted objections to certain evidence relied upon by Underwriters. Underwriters filed objections to evidence submitted by Patriot.

The trial court declined to rule on the objections, which Patriot had raised in its responsive separate statement, because they were in violation of California Rules of Court, rule 3.1354(b). The court ruled on Underwriters's evidentiary objections, sustaining some and overruling others. None of the rulings on the evidentiary objections is at issue in this appeal.[2] We therefore do not further refer to them.

The trial court granted Underwriters's motion for summary judgment, finding, "Defendant Underwriters' evidence shows that the unattended locked vehicle exclusion in the Plaintiff's claim, based upon the lack of visible signs that the theft was the result of forced entry, and Plaintiff's evidence failed to create a triable issue of material fact. In the absence of coverage for Plaintiff's loss, there is no claim for bad faith, thus summary judgment is appropriate."

Judgment was entered in favor of Underwriters and against Patriot as to the entirety of the complaint against Underwriters (the first and second causes of action). Patriot appealed.

---

[2] Patriot addresses the trial court's evidentiary rulings on the last page of Patriot's reply brief, in which Patriot states: "Judge Nakamura erred in sustaining many [of] Lloyd's objections to the expert declaration, since Mr. Warren provided sufficient background information to establish himself as a claims handling expert [citation] and experts are allowed to testify upon ultimate issues in a case [citation]." Underwriters asserted multiple objections to 15 portions of Bruce Warren's declaration. Patriot fails to identify which of the trial court's evidentiary rulings constituted error or explain why such rulings constituted an abuse of discretion.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

We review orders granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case . . . ." [Citation.]' [Citation.] '[O]nce a moving defendant has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established," the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." [Citations.]' [Citation.]" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.) We "'"liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

### II.

#### SUMMARY JUDGMENT WAS PROPERLY GRANTED.

In the complaint, Patriot alleged Underwriters breached its insurance contract by failing to honor the policy and indemnify Patriot for its loss. The plain language of the policy's locked vehicle conditional exclusion excluded coverage for loss "caused by or resulting from the theft from any unattended vehicle unless at the time of

6

theft its windows, doors and compartments were closed and locked *and* there are visible signs that the theft was the result of forced entry." (Italics added.) The policy language is not ambiguous.

It is undisputed there were no visible signs that the theft was the result of forced entry. Nihan admitted that there were no signs of forced entry and he had no idea how the thieves entered the van or how they started the engine. Patriot produced no evidence supporting a finding of visible signs of forced entry. Therefore, because the type of loss suffered by Patriot was expressly excluded from the policy, on this record and as a matter of law, Underwriters cannot be liable for breach of contract based on its denial of Patriot's claim.

Furthermore, "an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss. [Citations.] If the insurer's investigation—adequate or not—results in a *correct* conclusion of no coverage, no tort liability arises for breach of the implied covenant." (*Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th 1241, 1250.) Summary judgment was therefore properly granted in favor of Underwriters as to Patriot's claims for breach of contract and breach of the implied covenant.

In its opening brief, Patriot suggests summary judgment should not have been granted because Underwriters's "own denial letter mentioned the possibility that a slim jim was used to break into the van" and a slim jim "is a tool for breaking . . . into locked vehicles." A copy of Underwriters's denial letter was included in the evidence submitted by Underwriters in support of its motion for summary judgment. That letter states in part: "We saw no evidence of forced entry into the vehicle at the time of our inspection, such as a broken window, a broken lock, a forced door, etc. You confirmed that there was no evidence of forced entry when you picked up the vehicle. The police report stated that there was no sign of forced entry. There was speculation that someone

7

had used a slim jim, or even a tow truck, in order to take the vehicle. It was also confirmed that there was no damage to the ignition or wiring."

Nothing in Underwriters's denial letter constitutes evidence the van showed visible signs of forced entry, by a slim jim or any other means. The reference to a slim jim as possibly being involved was described as speculation. Patriot has not offered any evidence that suggests the thief or thieves used a slim jim.

At oral argument on appeal, Patriot's counsel argued that the fact the vehicle was moved means there was forced entry. We reject this argument as it avoids the very question at issue in this case. That the vehicle had been moved to a new location does not support a finding of visible signs of *forced* entry—but only that there might have been entry into the vehicle.

Absent *any* evidence upon which a trier of fact could reasonably find visible signs of forced entry, Patriot's claims fail as a matter of law. We cannot ignore the express terms of the policy.

DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.

FYBEL, J.

I CONCUR:

ARONSON, J.

8

Moore, J., Dissenting.

I respectfully dissent. There is no dispute here the insured's locked vehicle was parked with its windows closed in front of his home. Several days later, the vehicle was found in a parking lot in another city. There were no broken door locks or windows, no cut wires and no damage to the ignition area of the vehicle. But equipment and tools valued at $35,000, which had been mounted inside the vehicle, were missing.

The commercial general liability policy at issue excluded a loss "resulting from theft from any unattended vehicle unless at the time of theft its windows, doors and compartments were closed and locked and there are visible signs that the theft was the result of forced entry." The insurer denied coverage and the trial court granted summary judgment in the insured's action against the insurer, finding there was no coverage because there were no signs there was forced entry into the vehicle.

*Ambiguous Policy Exclusion*

Policy language is usually construed according to the plain and ordinary meaning, resolving ambiguities in favor of coverage. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 825-826.) An exception to construing language in its ordinary and popular sense occurs if a special meaning is given to the use of a term. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.)

In this case, the insurer relies upon *Johnson v. Pacific Indem. Co.* (1966) 242 Cal.App.2d 878. In *Johnson*, the insured made a claim after a business was burglarized. The policy language included the words: "'[T]he felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of the premises at the place of such entry. . . .'" (*Id.* at p. 879.)

1

But the policy language in the instant case does not mention "'actual force and violence'" or "'visible marks made by tools, explosives, electricity or chemicals.'" Nor does it mention "'physical damage.'" It states "visible signs that the theft was the result of forced entry." The policy here does not describe what "visible signs" means.

Throughout the insurance policy, there are definitions and special meanings provided for such terms as "electronic data," "computer virus," "any kind of seepage or any kind of pollution and/or contamination," "your product," "your work," "exterior insulation and finish system," "you," "your," "we," "us," "our," and "insured." The policy also contains a lengthy definition section which provides further special meanings for various other terms and words. In at least one place in the policy, an "amendatory" definition is provided.

It is the burden of the insurer to show a claim falls within an exclusion. (*Regional Steel Corp. v. Liberty Surplus Ins. Corp.* (2014) 226 Cal.App.4th 1377, 1390; *Dyer v. Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1547.) It "'"rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language."'" (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 766.)

If, as in *Johnson v. Pacific Indem. Co.*, *supra*, 242 Cal.App.2d at page 879, the insurer here meant that "'visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of'" a vehicle was required, it certainly knew how to say that, as evidenced by the scores of definitions and word explanations it does provide in its policy. In this case, the insurer has not met its burden to show the claim falls within an exclusion.

*The Insurer Did Not Meet Its Burden in the Summary Judgment Motion*

Code of Civil Procedure section 437c, subdivision (c), states: "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers . . . and all inferences

2

reasonably deducible from the evidence, except summary judgment may not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact."

Vehicles do not (yet) drive themselves to a parking space in a commercial parking lot, next to a field, in another city from where their owners left them. It is true that we do not know exactly how a forced entry could have been accomplished. An inference there was a visible sign of forced entry into the vehicle can reasonably be drawn from the fact the vehicle was left locked in front of the owner's home but found in a parking lot in another city several days later with valuable contents forcibly removed.

Penal Code section 466 states: "Every person having . . . in his or her possession a . . . slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, . . . master key, . . . or other instrument or tool with intent feloniously to break or enter into any . . . vehicle . . . is guilty of a misdemeanor." Our Supreme Court recognizes that "[a] 'slim jim' is a tool for breaking into locked vehicles." (*People v. Duarte* (2000) 24 Cal.4th 603, 609, fn. 1.)

The moving parties ask the court to draw the inference the vehicle was unlocked with a key. Under the circumstances found in this record, however, there exists an inference in contradiction; that is, a trier of fact might reasonably infer there are "visible signs that the theft was the result of forced entry" because the car was not where its owner parked it. In light of these contradicting inferences, summary judgment in favor of the insurer should not have been granted.


MOORE, ACTING P. J.


3