[No. D054312. Fourth Dist., Div. One. Dec. 29, 2009.]

STEVEN TRUONG et al., Plaintiffs and Appellants, v.
BRUCE M. GLASSER, Defendant and Respondent.

**COUNSEL**

The Gomez Law Group, Alvin M. Gomez and Sarah Kvarme for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Peter L. Garchie, Ruben Tarango, Jeffry A. Miller, Matthew B. Stucky and Lisa Cooney for Defendant and Respondent.

**OPINION**

**McDONALD, J.**—Plaintiff Vision Manufacturing, Inc. (VMI), and its president, plaintiff Steven Truong, filed a legal malpractice action against Attorney Bruce M. Glasser arising out of his purported negligent advice in a real estate transaction. Glasser moved for, and the court granted, summary judgment in favor of Glasser on the ground the action was barred by the Code of Civil Procedure[1] section 340.6 one-year statute of limitations. VMI and Truong (together Plaintiffs) timely appealed.

## I

### RELEVANT UNDISPUTED FACTS

#### A. *The Initial Lease*

VMI manufactures printed circuit boards. Because the lease at its manufacturing facility was set to expire at the end of 2005, VMI searched for a new facility, and hired a commercial leasing broker to help in that search.

Plaintiffs located a suitable property for VMI's facility in Vista, California. The property was owned by Mr. Miller. In September or October of 2005, VMI received a copy of a proposed lease for the property and sent it to Glasser for his review. The lease for the property was apparently signed by VMI in late October 2005, and VMI obtained the keys to the property on November 1, 2005, and began making tenant improvements to the property.

#### B. *The Problems and Lease Addendum*

Less than two weeks after obtaining possession of the newly leased property, Plaintiffs learned from the City of Vista that a large portion of the property (the mezzanine) could not be occupied because it was not in compliance with building codes. Additionally, the City of Vista told Plaintiffs it would not grant a permit to install certain "power upgrades" to the property until the mezzanine problems were remediated. Other disputes arose between Plaintiffs and Miller over who would pay for various improvements needed to allow VMI's business to operate on the property. Truong asked Robbin Thompson (VMI's unofficial chief financial officer) to draft subsequent lease addendums during November 2005 to reflect the resolution of the disputes.

In early December 2005 Truong threatened to sue Miller if he did not agree to Truong's proposal for allocating the costs of repairing and improving the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

property. Miller responded by telling Truong that he would not allow VMI to move into the property unless VMI signed a "Lease Addendum" designed to resolve the outstanding disputes among the parties. Among other terms, the Lease Addendum provided that Miller would obtain all of the necessary permits to allow VMI to use the mezzanine and VMI would waive and release Miller from any claims for damages VMI might have arising out of the mezzanine problems.

Truong sent a copy of the proposed Lease Addendum to Glasser for his review. Although the parties dispute whether Glasser advised Truong to sign the Lease Addendum,[2] it is undisputed Truong signed the Lease Addendum less than two weeks before the expiration of the old lease.

### C.  *Plaintiffs' Lawsuit Against Miller*

Plaintiffs apparently remained dissatisfied with Miller's performance after moving into the property and, in March 2006, filed suit against Miller (the Miller Lawsuit). Plaintiffs were represented by Attorney Brad Nakase in the Miller Lawsuit, and Glasser did not represent Plaintiffs in that action. The Miller Lawsuit contained claims for breach of contract, fraud, negligence, unfair business practices and declaratory relief, and sought damages from Miller arising from VMI's inability to occupy the mezzanine portion of the property. Plaintiffs' complaint in the Miller Lawsuit acknowledged that the Lease Addendum purportedly waived all claims involving the mezzanine issue, but alleged the claims involving the mezzanine were not barred because the Lease Addendum was unenforceable under a variety of theories, including fraud in the inducement, lack of consideration, economic duress, and unconscionability.

In August 2007 the court in the Miller Lawsuit entered judgment against VMI and in favor of Miller, and awarded Miller more than $220,000 in attorney fees. Truong later signed a settlement agreement with Miller, agreeing to pay over $300,000 to Miller in connection with Truong's guarantee of VMI's lease with Miller.

---

[2] Truong averred Glasser said to go ahead and sign the Lease Addendum and VMI could later sue Miller over the disputes, and did not advise Truong that he had other options, including refusing to sign the Lease Addendum. Glasser, however, testified he told Truong *not* to sign and that Truong had the option of not signing and instead suing for damages. Glasser also submitted testimony from VMI's unofficial chief financial officer, Ms. Thompson, who stated she was part of the conference call between Truong and Glasser, who did not want Truong to sign the Lease Addendum.

## II

## THE PRESENT LAWSUIT

### A. *The Complaint*

On September 4, 2007, Plaintiffs filed this lawsuit against Glasser. The gravamen of the present action alleged Glasser was negligent and breached his fiduciary duty to Plaintiffs by not properly advising them concerning the lease for the property and the Lease Addendum. The action sought damages because Plaintiffs incurred attorney fees, costs, and other losses arising from their attempt to rescind the Lease Addendum and were also injured by their inability to use the property.

### B. *The Summary Judgment Motion*

Glasser moved for summary judgment. He asserted, among other grounds, that any claim for malpractice was barred by the section 340.6 statute of limitations because Plaintiffs had discovered the acts constituting Glasser's alleged negligence and had sustained actual injury not later than March 2006 when they hired Attorney Nakase to escape the consequences of the lease and Lease Addendum.

Plaintiffs opposed the motion. On the merits of Glasser's statute of limitations argument, Plaintiffs asserted there were triable issues of fact on whether the statute of limitations was tolled because (1) they suffered no actual injury from Glasser's negligence until they lost the Miller Lawsuit, and (2) Glasser provided continuous representation to Plaintiffs with respect to the Miller Lawsuit until less than one year prior to September 4, 2007. Plaintiffs also interposed evidentiary objections to much of the evidence filed by Glasser in support of the summary judgment motion.

The trial court's tentative ruling was to grant the summary judgment motion on the statute of limitations ground. However, at the original hearing on the motion, Plaintiffs' counsel objected that the court's tentative ruling relied on a case (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217 [31 Cal.Rptr.2d 525] (*Foxborough*)) not cited by either party, and the court granted Plaintiffs' request to file supplemental briefing. After supplemental briefing was filed, the court affirmed its tentative ruling, concluding Plaintiffs suffered actual injury when they obtained new counsel to file a lawsuit concerning the lease and Lease Addendum, and therefore the malpractice lawsuit was filed more than one year after they suffered actual injury. The court overruled Plaintiffs' evidentiary objections and granted summary judgment in favor of Glasser.

III

## LEGAL STANDARDS

The summary judgment procedure is directed at whether there is evidence that requires the fact-weighing procedure of a trial. " '[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves.' [Citation.] The trial judge determines whether triable issues of fact exist by reviewing the affidavits and evidence before him or her and the reasonable inferences which may be drawn from those facts." (*Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127, 131 [40 Cal.Rptr.2d 249].) However, a material issue of fact may not be resolved based on inferences if contradicted by other inferences or evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

To prevail on a motion for summary judgment, a defendant must show one or more elements of the plaintiff's cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (*o*).) The evidence of the moving party is strictly construed and that of the opponent liberally construed, and any doubts as to the propriety of granting the motion are to be resolved in favor of the party opposing the motion. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].) The trial court does not weigh the evidence and inferences, but instead merely determines whether a reasonable trier of fact could find in favor of the party opposing the motion, and must deny the motion when there is some evidence that, if believed, would support judgment in favor of the nonmoving party. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139 [127 Cal.Rptr.2d 145].) Consequently, summary judgment should be granted only when a moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).)

Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether there exists a triable issue of material fact. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582 [35 Cal.Rptr.2d 876]; *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 723 [36 Cal.Rptr.2d 665].) In practical effect, we assume the role of a trial court and apply the same rules and standards governing a trial court's determination of a motion for summary judgment. (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1121–1122 [63 Cal.Rptr.2d 359].) We liberally construe the evidence in support of the party opposing summary judgment (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615,

88 P.3d 517]), and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards (cf. *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850).

## IV

## ANALYSIS

### A. *Summary Judgment on Statute of Limitations Grounds*

*Legal Standards*

The applicable statute of limitations for legal malpractice claims is section 340.6. That section states: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . ." (§ 340.6, subd. (a)(1), (2).)

Absent tolling, a legal malpractice action accrues, and the one-year limitations period commences running, when the plaintiff discovers or through the use of reasonable diligence should have discovered the facts constituting the wrongful act. (§ 340.6, subd. (a)(1), (2).) The one-year period is triggered when the client discovers, or should have discovered, the facts constituting the wrongful act or omission and "not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts. 'It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action.' " (*Worton v. Worton* (1991) 234 Cal.App.3d 1638, 1650 [286 Cal.Rptr. 410].)

Even where the plaintiff has discovered the facts constituting the negligent conduct, the statute provides for tolling under limited circumstances. However, because "subdivision (a) . . . states that 'in no event' shall the prescriptive period be tolled except under those circumstances specified in the statute[,] . . . the Legislature expressly intended to disallow tolling under

any circumstances not enumerated in the statute." (*Laird v. Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691].) First, if the plaintiff has not sustained actual injury, the one-year statute is tolled. (See *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751–752 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*).) Second, if the attorney continues to represent the client regarding the specific subject matter in which the alleged wrongful act or omission occurred, the statute will not begin to run until the attorney ceases representing the client in connection with that subject matter. (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1535–1536 [80 Cal.Rptr.2d 94].)

In the proceedings below, and on appeal, Plaintiffs contended the statute was tolled because (1) Plaintiffs sustained no actual injury from Glasser's negligence until they lost the Miller Lawsuit, and (2) Glasser provided continuous representation to Plaintiffs with respect to the Miller Lawsuit until less than one year prior to September 4, 2007.[3] We therefore examine whether the trial court correctly ruled there was no triable issue of material fact that these tolling provisions did not operate to extend the statute of limitations past September 4, 2006.

### *Actual Injury*

■ There is no bright-line rule to apply in determining when actual injury has occurred within the meaning of section 340.6. (*Adams v. Paul* (1995) 11 Cal.4th 583, 588 [46 Cal.Rptr.2d 594, 904 P.2d 1205].) "Instead, actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission." (*Jordache, supra*, 18 Cal.4th at p. 761, fn. 9.) Although it is well settled that "determining when actual injury occurred is predominantly a factual inquiry[,] [citations] [w]hen the material facts are undisputed, the trial court can resolve the matter as a question of law in conformity with summary judgment principles." (*Id.* at p. 751.)

Plaintiffs assert they did not incur actual injury until the judgment in the Miller Lawsuit was entered against VMI. However, numerous cases have

---

[3] In the proceedings below, in response to Glasser's summary judgment motion asserting there was no triable issue of fact as to whether Plaintiffs knew or should have known of the facts constituting the wrongful act and had sustained actual injury by March 2006 because they were forced to file the Miller Lawsuit as of that time, Plaintiffs peremptorily asserted "that neither VMI nor Truong discovered the negligence of Glasser until after August 31, 2007," but cited no evidentiary or legal support for that conclusion. Moreover, on appeal, Plaintiffs' opening brief contains no argument asserting the trial court erred in granting summary judgment because there were triable issues of fact on whether Plaintiffs discovered (or through the use of reasonable diligence should have discovered) the facts constituting the wrongful act. We therefore do not further consider that argument. (*Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 260 [24 Cal.Rptr.3d 895].)

rejected this approach. For example, in *Foxborough, supra,* 26 Cal.App.4th 217, the court rejected the plaintiff's contention that it did not suffer actual injury as a result of the attorney's negligence until it lost the underlying litigation arising out of the alleged transactional malpractice. (*Id.* at pp. 221–222.) In *Foxborough,* the attorney drafted documents for the plaintiff converting an apartment complex it owned into condominiums, transferring the property to a corporation in a property exchange, and purportedly securing the right to develop a smaller parcel with condominiums that the plaintiff could automatically annex to the condominium project at any time without the approval of the existing condominium owners. The automatic annexation right, without time constraints, was an important right the plaintiff sought to secure by the document, but that right was allegedly lost through the attorney's negligence. When the plaintiff was unable to effect the automatic annexation, it sued to recapture the right to annex, but in 1990 the court entered judgment against it. (*Id.* at pp. 222–223.) The plaintiff then sued the attorney, alleging it had been injured because of the lost annexation rights and the costs it incurred seeking to recoup that right, but the trial court entered summary judgment for the attorney on the ground that the action was time-barred. (*Id.* at pp. 223–224.)

█    On appeal, the plaintiff contended it did not suffer actual injury as a result of the attorney's negligence until it lost the underlying litigation. The *Foxborough* court rejected that claim of tolling, holding the judgment in the underlying litigation "was not the first realization of an injury from the alleged malpractice, but rather the loss of an alternative means for obtaining monetary relief for that injury [and] . . . that judgment was but the last in time of the alleged injuries." (*Foxborough, supra,* 26 Cal.App.4th at p. 226.) The *Foxborough* court reasoned that "when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred." (*Id.* at p. 227.)

In *Jordache,* the court reaffirmed the approach articulated in *Foxborough* and concluded that although nominal damages, speculative harm, and the mere threat of future harm are not actual injury, a client may suffer actual injury "without any prior adjudication, judgment, or settlement . . . [and] the relevant consideration is the fact of damage, not the amount." (*Jordache, supra,* 18 Cal.4th at p. 743.) In *Jordache,* the defendant attorneys were retained to defend the plaintiffs in an action filed against them by a competitor, but the defendant attorneys failed to advise the plaintiffs about (or to assert a timely claim to) liability insurance benefits covering the underlying action. Over two years after the defendants' alleged failures, the plaintiffs retained another law firm that recognized the original defendant attorneys'

delay in tendering the claim to the insurers imperiled claims to liability coverage; however, the new attorneys nevertheless filed actions against the plaintiffs' liability insurers seeking to realize on the policy benefits. (*Id.* at pp. 744–745.) Over two years later, after rulings were entered in the insurers' favor, the plaintiffs settled all of the insurance coverage lawsuits. The plaintiffs then filed the action for legal malpractice. (*Id.* at pp. 745–746.)

The defendant attorneys moved for summary judgment on statute of limitations grounds, arguing the clients had suffered actual injury by, among other things, having to pay the costs to defend themselves. The clients, although conceding they discovered the alleged malpractice by December 1987, asserted they did not sustain actual injury until the litigation with the insurers was resolved for less than the full amount of their claim. The trial court granted summary judgment for the attorneys, concluding the clients sustained actual injury within the meaning of section 340.6 more than one year before the malpractice suit was filed. (*Jordache, supra,* 18 Cal.4th at pp. 746–747.) The Supreme Court affirmed the trial court's decision.

█ *Jordache* specifically noted the approach of the Court of Appeal, which "suggested that . . . actual injury does not occur until related litigation concludes" (*Jordache, supra,* 18 Cal.4th at p. 752), is an approach that "departs from *Budd* [*v. Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433]] and *Adams* [*v. Paul, supra,* 11 Cal.4th 583]. Actual injury refers only to the legally cognizable damage necessary to assert the cause of action. There is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury. The determination of actual injury requires only a factual analysis of the claimed error and its consequences. The inquiry necessarily is more qualitative than quantitative because the fact of damage, rather than the amount, is the critical factor." (*Ibid.*) The *Jordache* court concluded the attorney's negligence, by allowing the insurers to interpose an objectively viable defense to coverage, caused immediate injury to the clients in the form of additional litigation costs in the coverage litigation, as well as reducing the value of the claim against the insurers and other lost opportunity costs. (*Id.* at pp. 752–753.) Because these injuries were immediate, and the outcome of the litigation engendered as a result of the malpractice would only affect the amount rather than the fact of injury, the court concluded the clients had suffered actual injury well before the litigation was concluded. (*Id.* at pp. 744, 752–753.)

Finally, in *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26 [123 Cal.Rptr.2d 555], the plaintiff (a landscaping company) had performed work for a building contractor that declared bankruptcy. The plaintiff hired the defendant attorneys to advise it on how the bankruptcy would impact the

plaintiff's ability to collect its receivables, and specifically whether the plaintiff could perfect its recorded mechanic's liens through an inexpensive procedure of filing "Notices of Perfection of Security Interest" with the bankruptcy court. The attorneys advised the plaintiff that notification of the plaintiff's mechanic's liens in the federal bankruptcy court would not perfect them, and instead advised the plaintiff to file foreclosure actions in state court; the attorneys filed such suits, but those suits were subject to automatic stay because of the bankruptcy. (*Id.* at pp. 32–33.)

Approximately one year later, the trustee argued to the bankruptcy court that the liens were invalid, and in September 1996 the plaintiff learned the bankruptcy judge had expressed doubts on the validity of the plaintiff's liens. By mid-1997, the plaintiff had received no payments on its liens or any replacement liens, and therefore moved the bankruptcy court for an order requiring the trustee to provide adequate security for its liens, but in September 1997 the court denied the motion. (*Village Nurseries v. Greenbaum, supra*, 101 Cal.App.4th at pp. 33–35.) The plaintiff then filed its malpractice complaint in 1998 and, contesting the attorneys' contention that the action was barred by the statute of limitations, argued its claims were not time-barred because it did not sustain actual injury as a result of the attorneys' alleged wrongful acts or omissions until September 1997 when the bankruptcy court determined its liens were invalid. (*Id.* at p. 40.) The court rejected that argument and applied *Jordache* to conclude that once the trustee interposed an objectively viable argument that the liens were not perfected due to the attorneys' error in not giving notice, the plaintiff had sustained actual injury. (*Village Nurseries*, at pp. 41–42.)

Our review of *Jordache*, *Foxborough* and *Village Nurseries* convinces us that the trial court correctly found Plaintiffs first sustained actual injury when they were required to obtain and pay new counsel to file a lawsuit seeking to escape the consequences of their signing the lease and Lease Addendum, which were among the actual damages Plaintiffs suffered as a result of Glasser's alleged malpractice. Plaintiffs argue, however, that *Jordache* and *Adams v. Paul* both affirmed that a statute of limitations defense involves questions of fact as to actual injury (*Jordache, supra*, 18 Cal.4th at p. 743; *Adams v. Paul, supra*, 11 Cal.4th at pp. 585–586), and therefore summary judgment is inappropriate. However, *Jordache*'s observations were qualified by the caveat that, although it is well settled that "determining when actual injury occurred is predominantly a factual inquiry[,] [citations] [w]hen the material facts are undisputed, the trial court can resolve the matter as a question of law in conformity with summary judgment principles." (*Jordache*, at p. 751.) Plaintiffs also quote *Jordache* as stating there are cases (specifically citing *Baltins v. James* (1995) 36 Cal.App.4th 1193 [42 Cal.Rptr.2d

896]) in which the "allegations of attorney error in a particular case's factual setting may lead to a finding that actionable injury occurred only when a related action was adjudicated." (*Jordache*, at p. 755.)[4] However, Plaintiffs do not persuasively distinguish the injury they suffered from a substantively identical injury suffered in *Jordache*, and do not articulate how the unique circumstances of *Baltins v. James* are sufficiently analogous to the circumstances of this case to require that *Baltins* be followed.

■ We conclude that under *Jordache*, *Foxborough* and *Village Nurseries*, the trial court correctly found Plaintiffs first sustained actual injury when they obtained and were obligated to pay new counsel to file a lawsuit seeking to escape the consequences of their signing the lease, Lease Addendum and guarantee, and therefore sustained actual injury more than one year before the malpractice action was filed.[5]

### Continuous Representation

Plaintiffs alternatively argued below, and reassert on appeal, the statute of limitations was tolled under the continuous representation exception. Plaintiffs assert that because there was evidence Glasser continued to represent them through the end of 2006, the statute of limitations was tolled through the end of that period.

---

[4] Plaintiffs also quote *Jordache*'s statement that there are "instance[s] where the propriety of the attorney's advice or actions depended on the outcome of a claim by or against a client" (*Jordache, supra*, 18 Cal.4th at p. 759) as reiterating this principle. However, Plaintiffs overlook that the quoted language was used by *Jordache* to synopsize the result in *Sirott v. Latts* (1992) 6 Cal.App.4th 923 [8 Cal.Rptr.2d 206]. *Jordache* had earlier stated "*Sirott* does not support a general rule that judicial determinations are necessary precursors to actual injury" (*Jordache*, at p. 759) and observed that in some cases (such as *Sirott*) the claim may have to be resolved for the client to know that the attorney erred and, in those circumstances, the "pertinent inquiry . . . may not be when the plaintiff sustained actual injury, but when the plaintiff discovered, or reasonably should have discovered, the facts constituting a *wrongful* act or omission." (*Jordache*, at p. 759.) We have already noted Plaintiffs' opening brief did not assert there were issues of fact on whether Plaintiffs discovered (or should have discovered) the facts constituting the wrongful act (see fn. 3, *ante*), and therefore this aspect of *Jordache* is irrelevant to the present action.

[5] Plaintiffs assert on appeal that the trial court erred in granting summary judgment on Truong's separate claim for malpractice because he did not sustain actual injury until March 2008 when he agreed to pay Miller over $300,000. However, Truong cites no authority to support his apparent argument that, when a debtor incurs a liability due to the malpractice of the debtor's attorney and the guarantor is required to pay that debt, the guarantor's cause of action against the attorney accrues later than the principal debtor's cause of action rather than being subject to the same defenses available to the principal debtor. In the absence of argument and citation to authority to support Truong's claim, an appellate court is "not bound to develop [his] arguments for [him]. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived. [Citations.] We do so here." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [79 Cal.Rptr.3d 588].)

■ As this court explained in *Crouse v. Brobeck, Phleger & Harrison, supra,* 67 Cal.App.4th 1509, the application of the continuing-representation tolling provision is rooted in two considerations: it prevents the attorney from defeating a malpractice action by continuing to represent the client until the statute of limitations has run; and it avoids forcing the client to file a lawsuit that would disrupt the ongoing attorney-client relationship, which would prevent the negligent attorney from attempting to correct or minimize the error. (*Id.* at p. 1535.) Consistent with these considerations, the courts have examined whether the attorney continued to represent the client regarding the specific subject matter in which the alleged wrongful act or omission occurred (*Crouse v. Brobeck, Phleger & Harrison*) and have employed an objective standard to determine when representation ceased. The attorney's representation is completed when the agreed tasks or events have occurred, the client consents to termination, or (in the context of litigation) when a court grants an application by counsel for withdrawal. (*Nielsen v. Beck* (2007) 157 Cal.App.4th 1041, 1049 [69 Cal.Rptr.3d 435].) For purposes of the statute of limitations, the attorney's representation is concluded as to the specific subject matter when the parties agree, and does not depend on a formal termination like withdrawing as counsel of record. (See, e.g., *Shapero v. Fliegel* (1987) 191 Cal.App.3d 842, 848 [236 Cal.Rptr. 696] [the failure to formally withdraw as attorney of record, standing alone, will not toll the statute of limitations under the rubric of continued representation]; *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165, 1173 [16 Cal.Rptr.2d 837] ["[t]he period of tolling should not turn upon the fortuity of the time of delivery of notice of discharge to counsel . . ."].) ■ The continuous representation tolling provisions "ultimately [depend], not on the client's subjective beliefs, but rather on evidence of an ongoing *mutual* relationship and of activities in furtherance of the relationship." (*Worthington v. Rusconi* (1994) 29 Cal.App.4th 1488, 1498 [35 Cal.Rptr.2d 169].)

The inquiry here is whether, using an objective standard, there is evidence raising a triable issue of fact about whether there was an ongoing relationship and activities in furtherance of the *specific* subject matter in which the alleged wrongful act or omission occurred. Our independent review of the record reveals no such evidence. It is undisputed the specific subject matter as to which Glasser's alleged wrongful act or omission occurred was the lease and Lease Addendum. It is also undisputed that, not later than March 2006, Plaintiffs had hired a different attorney (Mr. Nakase) to file litigation to pursue Plaintiffs' claims against Miller with respect to the lease and Lease Addendum, and the record is devoid of any evidence that Glasser aided, consulted with, or advised either Plaintiffs or Nakase in connection with that litigation. Indeed, the last date that Glasser gave any advice or services with

respect to the lease and Lease Addendum (at least on the evidence submitted by Plaintiffs in opposition to Glasser's summary judgment motion) was in late December 2005.

In *Rubinstein v. Barnes* (1987) 195 Cal.App.3d 276 [240 Cal.Rptr. 535], and again in *Panattoni v. Superior Court* (1988) 203 Cal.App.3d 1092 [250 Cal.Rptr. 390], the courts held the attorney was entitled to summary judgment because there was no evidence the attorney had taken any steps on behalf of the client in connection with the specific subject matter that was the subject of the alleged malpractice. (*Rubinstein*, at pp. 283–284; *Panattoni*, at pp. 1097–1098.) Indeed, the *Rubinstein* court commented, the evidence showed the client "did not request [the attorney] take any action concerning [the subject matter of the malpractice and] [t]he only facts alleged in her answers to interrogatories supporting her contention that respondent continued to represent her were that he never filed a formal withdrawal of counsel . . . ." (*Rubinstein*, at p. 283.) In *Foxborough, supra*, 26 Cal.App.4th at pages 228 to 229, the court affirmed the entry of summary judgment in the attorney's favor on statute of limitations grounds, and rejected the client's claim of tolling based on continuous representation, because the undisputed evidence showed the client had retained different counsel to prosecute the claims, "the record conspicuously lacks any indication of contact between [the attorney and the client concerning the subject matter] in the following two years" (*id.* at p. 229), and the only evidence of any subsequent relationship between the attorney and the client was as an expert witness in the litigation, which did not toll the limitations period. (*Ibid.* ["the limitations period is not tolled when an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to the plaintiff"]; accord, *Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 514, fn. 8 [66 Cal.Rptr.3d 52, 167 P.3d 666] ["The continuous relationship tolling provision applies only so long as representation continues 'regarding the specific subject matter in which the alleged wrongful act or omission occurred.' (§ 340.6, subd. (a)(2).) Once representation on that matter ends, a client must bring timely suit, notwithstanding that the attorney may continue to represent the client on a range of matters and a direct suit against the attorney may interfere with the attorney-client relationship . . . ."].)

Here, as in *Foxborough*, the undisputed evidence showed Plaintiffs retained different counsel to litigate the claims involving the lease and Lease Addendum, the record conspicuously lacks any evidence of any subsequent contact between Plaintiffs and Glasser concerning Plaintiffs' dispute with Miller over the lease and Lease Addendum, and the only evidence of any subsequent contact between Plaintiffs and Glasser apparently involved matters unconnected with the lease and Lease Addendum. As in *Rubinstein*, Plaintiffs rely only on the evidence Glasser never filed a formal withdrawal or termination of counsel, but that does not suffice to toll the statute of limitations.

### B. Discretion in Overruling Plaintiffs' Procedural Objection to Glasser's Motion

Plaintiffs asserted below, and reassert on appeal, that Glasser's motion for summary judgment should have been denied because his separate statement of material facts was procedurally defective. Plaintiffs argue Glasser did not comply with the mandate of California Rules of Court, rule 3.1350(d) because Glasser's separate statement of material facts did not separately identify "each cause of action, claim, issue of duty, or affirmative defense, and each supporting material fact claimed to be without dispute with respect to the cause of action, claim, issue of duty, or affirmative defense." However, the format contained in rule 3.1350(h) was the format adopted by Glasser, and the requirement for separately identified issues is required only for "[s]upporting and opposing separate statements in a motion for summary adjudication . . . ." (Rule 3.1350(h); see also rule 3.1350(b).) Because Glasser's motion sought summary judgment, rather than summary adjudication of a subissue, his statement met the requirements of rule 3.1350 without the necessity of separately listing subissues as to which summary adjudication was sought.

Moreover, even if some additional headings had been required, the court's power to deny summary judgment on the basis of failure to comply with California Rules of Court, rule 3.1350 is discretionary, not mandatory. (See *Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 523 [23 Cal.Rptr.3d 1]; cf. *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315–316 [125 Cal.Rptr.2d 499].) The facts critical to the ruling were adequately identified, and Plaintiffs have not explained how any alleged deficiency in Glasser's separate statement of material facts impaired Plaintiffs' ability to marshal evidence to show that material facts were in dispute as to the proper application of the statute of limitations. We conclude the trial court did not abuse its discretion by declining to reject the summary judgment motion based on the absence of headings within the separate statement of material facts.

### C. Discretion in Overruling Plaintiffs' Evidentiary Objections

Plaintiffs finally assert the trial court erred by considering certain evidence that was inadmissible because it was hearsay and lacked foundation.[6]

---

[6] On appeal, Plaintiffs also assert the trial court erred by failing to rule on their evidentiary objections. However, the order granting Glasser's summary judgment motion explicitly states the court "overrules all of Plaintiffs' objections to the evidence relied upon by . . . Glasser in support of his motion."

Plaintiffs assert the billing records of Nakase were hearsay and lacked foundation, and it was therefore error to overrule the objection.

First, the burden is on Plaintiffs to show error affirmatively in the evidentiary rulings. (See, e.g., *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 89 [89 Cal.Rptr.3d 34].) Although Plaintiffs peremptorily assert Nakase's billing records were inadmissible hearsay, they make no effort to demonstrate either that those records were offered for an inadmissible purpose or that the trial court abused its discretion in admitting the billing records under the business records exception to the hearsay rule. (See, e.g., *In re Troy D.* (1989) 215 Cal.App.3d 889, 902–903 [263 Cal.Rptr. 869].)

Second, Plaintiffs also do not articulate how the admission of that evidence was prejudicial. (*Cristler v. Express Messenger Systems, Inc., supra*, 171 Cal.App.4th at p. 81.) The billing records were apparently relevant to establish the absence of any triable issue of fact on two pivotal issues: (1) whether Plaintiffs first sustained actual injury no later than March 2006 (because they were required to obtain new counsel to litigate the matters raised in the Miller Lawsuit), and (2) whether the tolling provisions of the continuous representation exception were inapplicable (because Plaintiffs were represented by a different attorney in the Miller Lawsuit). Glasser's evidentiary showing averred, and Plaintiffs admitted, that "[o]n March 10, 2006[,] attorney Nakase filed [the Miller action] on behalf of VMI," and included a copy of the Miller Lawsuit itself showing Glasser did not represent Plaintiffs in that action.[7]

Under these circumstances, Plaintiffs have demonstrated neither that the trial court abused its discretion in considering the evidence submitted by Glasser nor that any alleged error was prejudicial.

---

[7] On appeal, Plaintiffs assert they objected to consideration of the copy of the lawsuit because "there are limitations on Evidence Code section 452." That section provides for permissive judicial notice of, among other things, "[r]ecords of (1) any court of this state . . . ." (Evid. Code, § 452, subd. (d).) The limitations apparently adverted to by Plaintiffs on appeal are found in Evidence Code section 453, which provides that the trial court must "take judicial notice of any matter specified in Section 452 if a party requests it and: [¶] [has given the] adverse party sufficient notice . . . and [¶] [f]urnishes the court with sufficient information to enable it to take judicial notice of the matter." Glasser made the requisite request and furnished the requisite information, and Plaintiffs' implied argument that the evidence was inadmissible is without merit.

## DISPOSITION

The judgment is affirmed. Glasser is entitled to costs on appeal.

McConnell, P. J., and Aaron, J., concurred.