Filed 9/22/14 Lico v. Hopkins & Carley CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BETH ANN LICO, Plaintiff and Appellant, v. HOPKINS & CARLEY LLC et al., Defendants and Respondents. | A140385 (San Mateo County Super. Ct. No. CIV508693) |

Plaintiff and appellant Beth Ann Lico (appellant) filed a legal malpractice action against defendants and respondents Hopkins & Carley LLC and Jennifer Cunneen (Attorneys). The trial court granted Attorneys' motion for summary judgment. We affirm.

BACKGROUND

In 2002, Attorneys assisted appellant and her former husband, Steven Lico, in the preparation of an estate plan. As part of the plan, the Lico Family Revocable Trust ("Trust") was created. At the time, Mr. Lico held separate property interests in business entities. Appellant and Mr. Lico executed a Community Property Agreement ("Transmutation Agreement" or "Agreement"), prepared by Attorneys, under which Mr. Lico's separate property interests in the business entities were transmuted into community property interests in the Trust. This resulted in appellant holding a community property interest in the business entities. Attorneys did not provide legal services to appellant after 2002.

1

In October 2006, appellant filed a Petition for Dissolution of Marriage in San Mateo County Superior Court. The Superior Court appointed Neville K. Spadafore as "Temporary Judge" to preside over the dissolution. During those proceedings, Mr. Lico challenged the Transmutation Agreement, claiming he had not understood the full legal consequences when he signed it. He argued the Agreement was unenforceable. The dissolution court bifurcated the issue for determination in advance of the other issues in the proceeding.

Over several days in September and October 2007, the court held a trial to determine whether "the property transmutations created by the Licos' execution of their estate planning documentation on December 3, 2002 [should] be enforced by the Court or … be found to be unenforceable pursuant to applicable equitable and legal principles of California Law."

On January 25, 2008, the dissolution court filed its "Statement of Decision Re Validity/ Enforceability of Transmutation of Property" ("January 2008 Decision"), finding the Transmutation Agreement was unenforceable. The court found that, due to Attorneys' omissions, Mr. Lico did not understand the legal effect of the estate planning documents he signed. The court held that each party's separate property interests, which were otherwise transmuted into community property pursuant to the Transmutation Agreement, were reconfirmed back to each party as separate property. The court stated, "[t]he substance of this Statement of Decision will ultimately be incorporated into the" dissolution judgment, but the court also indicated a willingness to "certify the matter for independent appeal, as the issue . . . was determined pursuant to bifurcation for separate trial in advance of the disposition of all other outstanding dissolution of marriage issues in this case." There was no such independent appeal.

In 2007 and 2008, appellant incurred over $120,000 in attorney's fees and costs litigating the Transmutation Agreement's enforceability. Following the January 2008 Decision, appellant removed from her income and expense declaration any reference to ownership interests in the partnerships that had been included in the Agreement.

In May 2010, appellant filed a motion seeking an order that Mr. Lico pay the $120,000 in attorney fees and costs she had incurred in litigation regarding the Transmutation Agreement. Appellant asserted, "the Transmutation Agreement was 'rescinded' due to [Mr. Lico's] unilateral mistake or the legal malpractice by Jennifer Cunneen or some combination of both." The court denied the motion.

On October 6, 2010, the Judgment of Dissolution was filed. On September 28, 2011, appellant filed the present legal malpractice action. She alleged Attorneys provided legal services to her in December 2002 that were below the applicable standard of care and resulted in the unenforceability of the Transmutation Agreement. She alleged she was "damaged by having to incur attorneys fees and costs defending the enforceability of the [Transmutation Agreement], by having to file and prosecute an appeal defending the [Transmutation Agreement], and by being denied the benefit of having the [Transmutation Agreement] enforceable."

Attorneys moved for summary judgment on the ground that appellant suffered "actual injury" by January 2008 at the latest, and, therefore, her September 2011 suit was untimely. The trial court granted the motion and subsequently denied appellant's motion for new trial. This appeal followed.

## DISCUSSION

"Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether there exists a triable issue of material fact. [Citations.] . . . We liberally construe the evidence in support of the party opposing summary judgment [citation], and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards." (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 109–110 (*Truong*).)

3

Section 340.6, subdivision (a) of the Code of Civil Procedure[1] (hereafter "Section 340.6(a)") specifies the statute of limitations applicable to legal malpractice claims. (*Truong*, *supra*, 181 Cal.App.4th at p. 110.) The cause of action must be filed "within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." (§ 340.6(a).) Section 340.6(a) also includes a tolling provision, which provides in part that "[I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury. . . ."

Attorneys' alleged malpractice occurred in December 2002, when they prepared the Transmutation Agreement without properly advising Mr. Lico as to the effect of the Agreement. Appellant does not dispute Attorneys' assertion that she discovered the alleged malpractice by, at the latest, the time of the January 2008 Decision, which appellant describes as reading "like a malpractice complaint against Jennifer Cunneen." Moreover, appellant referenced the possibility that Attorneys had committed malpractice when she moved for attorney fees in May 2010. Accordingly, appellant's September 2011 legal malpractice action was untimely unless the statute of limitations period was tolled. Appellant argues for tolling under Section 340.6(a)(1), contending she did not suffer "actual injury" until the dissolution judgment was filed in October 2010.

"There is no bright-line rule to apply in determining when actual injury has occurred within the meaning of section 340.6. [Citation.]" (*Truong*, *supra*, 181 Cal.App.4th at p. 111.) "Instead, actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 761, fn. 9 (*Jordache*).) Although "determining when actual injury occurred is predominantly a factual inquiry[,] [w]hen the material facts are undisputed, the trial court can resolve the

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

matter as a question of law in conformity with summary judgment principles." (*Id.* at p. 751.)

*Jordache* is the leading Supreme Court decision on the meaning of the term "actual injury" in Section 340.6(a)(1). (*Callahan v. Gibson, Dunn & Crutcher LLP* (2011) 194 Cal.App.4th 557, 567 (*Callahan*).) *Jordache* held that "Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions . . . . [S]ection 340.6, subdivision (a)(1), will not toll the limitations period once the client can plead damages that could establish a cause of action for legal malpractice." (*Jordache*, *supra*, 18 Cal.4th at p. 743.) On the other hand, "a plaintiff who actually or constructively discovered the attorney's error, but who has suffered no damage to support a legal malpractice cause of action, need not file suit prematurely." (*Id.* at p. 757.)

In *Jordache*, the defendant law firm had allegedly failed to advise its clients they had insurance coverage for the defense of a lawsuit. (*Jordache*, *supra*, 18 Cal.4th at pp. 744–745.) After replacing the original law firm, the clients (who were also the insureds and eventual malpractice plaintiffs) sued their liability insurers for attorney fees and costs incurred in defending the underlying litigation. (*Id.* at p. 745.) The coverage action was ultimately settled for substantially less than the amount sought by the clients, in part due to the insurers' "late notice" defense to the coverage claims. (*Id.* at pp. 745–746.) The clients then sued their original law firm for negligence, seeking to recover, among other things, the additional defense costs that should have been covered by insurance. (*Id.* at p. 746.) The law firm argued the malpractice claim was time barred, contending their former clients had sustained actual injury when they were required to pay defense costs in the underlying litigation. (*Ibid.*) The clients argued they had not suffered actual injury until they settled for less than the full defense costs they had incurred. (*Ibid.*)

The California Supreme Court held the clients had sustained actual injury within the meaning of Section 340.6(a)(1) before the settlement of the insurance coverage litigation. (*Jordache*, *supra*, 18 Cal.4th at p. 743.) In particular, the clients sustained actual injury when they expended substantial sums on defense costs in the underlying

5

litigation that should have been paid by the insurers, and when they paid additional sums in litigation costs fighting the insurers' "objectively viable 'late notice' defense" to the coverage claims. (*Id.* at pp. 752–753.) In concluding those expenditures constituted actual injury, *Jordache* reaffirmed that, although "nominal damages, speculative harm, and the mere threat of future harm are not actual injury," a client may suffer actual injury "without any prior adjudication, judgment, or settlement." (*Id.* at p. 743.) *Jordache* emphasized that "[a]n existing injury is not contingent or speculative simply because future events may affect its permanency or the amount of monetary damages eventually incurred." (*Id.* at p. 754.) The distinction is between "an actual, existing injury that might be *remedied or reduced* in the future, and a speculative or contingent injury that might or might not *arise* in the future." (*Ibid.*; see also *ibid.* ["speculative and contingent injuries are those that do not yet exist, as when an attorney's error creates only a potential for harm in the future"].)

Attorneys contend that, under *Jordache*, appellant suffered actual injury when she incurred significant attorney fees and costs in litigating the validity of the Transmutation Agreement. Appellant, on the other hand, argues that in "transactional" malpractice cases a "final judgment" is the "proper demarcation point" for actual injury. Appellant's contention is based on reasoning expressly rejected by our high court in *Jordache*, *supra*, 18 Cal.4th at page 763. In *ITT Small Business Finance Corp. v. Niles* (1994) 9 Cal.4th 245, 258, the court adopted a categorical rule that "in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. It is at this point that the former client has discovered the fact of damage *and* suffered 'actual injury' due to the malpractice under section 340.6." *Jordache* overruled *ITT*, reasoning, "the rule that applies when a plaintiff sustains actual injury from malpractice in transactional matters cannot differ from the rule that applies when claims involve other areas of legal advice and services. The resolution of litigation related to alleged malpractice may or may not mark the point at which a plaintiff first sustains actual injury under section 340.6. The statutory scheme cannot accommodate a

6

peremptory rule that declares otherwise." (*Jordache*, at p. 763.) *Jordache* also rejected the public policy arguments now made by appellant in support of her proposed rule. (*Id.* at pp. 755–758.)

Appellant also claims that, in a transactional malpractice case such as the present one, a judgment is necessary to establish "proximate cause" between the alleged malpractice and injury. However, *Jordache* expressly rejected that causation analysis, stating, "There is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury. The determination of actual injury requires only a factual analysis of the claimed error and its consequences." (*Jordache*, *supra*, 18 Cal.4th at p. 752.)

Ultimately, appellant fails to explain why a judgment is necessary to show actual injury in her claim for damages based on fees incurred defending the Transmutation Agreement, but not for the damages claims in *Jordache*. It appears appellant's argument is based on a suggestion that the existence of malpractice was not certain until the October 2010 judgment was filed with a finding that the Agreement was unenforceable. Appellant argues that until that point "it was possible that these fees were incurred only because her former husband . . . was asserting a non-meritorious attack on the legality of the transmutation agreement." However, in *Jordache* the alleged malpractice gave the insurers only an "objectively viable" defense, but the court nonetheless held the fees paid by the insureds in the coverage action constituted actual injury. (*Jordache*, *supra*, 18 Cal.4th at p. 761; see *Callahan, supra,* 194 Cal.App.4th at pp. 573–575 [allegedly defective succession provisions in partnership agreement caused only contingent harm until incapacitation of general partner; at that point the defective provision caused actual injury, including the payment of attorney fees to prevent dissolution of the partnership]; see also *Truong*, *supra*, 181 Cal.App.4th at p. 114 ["Plaintiffs first sustained actual injury when they were required to obtain and pay new counsel to file a lawsuit seeking to escape

the consequences of their signing the lease and Lease Addendum."].)[2]

As in *Jordache*, *supra*, 18 Cal.4th at page 753, a final judgment incorporating a finding of malpractice could "only confirm, but not create" appellant's "actual injury" from error in preparation of the Transmutation Agreement.  Appellant's claim for legal malpractice is barred under Section 340.6(a).

## DISPOSITION

The trial court's judgment is affirmed.  Costs on appeal are awarded to respondents.

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
NEEDHAM, J.

_____
[2] Because this analysis is sufficient under *Jordache*, we need not decide whether the January 2008 Decision would constitute an "adjudication" of attorney error (*Jordache*, *supra*, 18 Cal.4th at p. 752), were an adjudication necessary to show actual injury.