Filed 6/15/16  Williams v. Prime Healthcare La Palma, LLC CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAHMAN WILLIAMS et al., | |
| Plaintiffs and Appellants, | G050343 |
| v. | (Super. Ct. No. 30-2012-00568313) |
| PRIME HEALTHCARE LA PALMA, LLC et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Frederick P. Aguirre, Judge.  Reversed.

Law Offices of Martin L. Stanley, Martin L. Stanley, and Jeffrey R. Lamb; Law Office of Maximilian Lee and Maximilian Lee for Plaintiffs and Appellants.

Carroll, Kelly, Trotter, Franzen, McKenna & Peabody, Thomas M. Peabody, David P. Pruett and Daniel A. Cooper for Defendants and Respondents.

\*        \*        \*

Plaintiffs and appellants Rahman Williams and Ser Williams filed a wrongful death action against defendants and respondents Prime Healthcare La Palma, LLC (La Palma) and Julene Michelle Baca (Baca; collectively with La Palma, defendants), among others. Baca is a registered nurse who worked at La Palma. Plaintiffs, the husband (husband) and son respectively of the deceased, Gracie Lee Williams (decedent), alleged defendants were negligent in their treatment of her, thereby leading to her death.

Defendants filed a motion for summary judgment, which the court granted on the ground the declarations by plaintiffs' three experts were inadmissible because they lacked foundation, and were conclusory and speculative. This was based on its finding the declarations failed to rely on admissible evidence for their conclusions defendants' actions were below the standard of care and their acts and omissions were a substantial cause of decedent's death.

Plaintiffs argue the court erred in not construing the experts' declarations liberally, and the contents of the declarations showed there were triable issues of fact defendants' actions caused decedent's death.

Our review of the declarations persuades us parts of them were admissible and sufficient to show a triable issue of fact. Therefore, we reverse.

**FACTS AND PROCEDURAL HISTORY**

Decedent went to the emergency room at La Palma. Baca completed a triage assessment. Decedent complained of a headache, 10 out of 10 on the pain scale. She had vomited once the previous night and told Baca she had a migraine headache. Decedent explained she had taken medication for tension headaches and ibuprofen. Her temperature was 98.3. When another assessment was made about an hour and 45 minutes later, no neurological problems were noted. Within the next 40 minutes decedent was more alert and advised her pain was now 8 on a scale of 10 and she felt better.

2

Decedent was evaluated by Dr. Rachelle Douglass (Douglass), also a defendant, who found no neck pain or stiffness. Douglass observed decedent's mental state was normal as were her speech, sensation, and strength. Douglass reviewed the nurse's notes and agreed with them. She prescribed Toradol to be administered intravenously, noted decedent's improvement, and ordered discharge with instructions.

When decedent left an hour and a half later, the nurse observed decedent's temperature was 98.1, her pulse was 78 and respiration, 18. One of defendants' experts testified his review of the records showed decedent was in stable condition with no headache. According to husband, when decedent left the hospital, she still had a headache and could not walk on her own.

Two days later decedent was taken to a different hospital by ambulance and diagnosed with meningitis and encephalitis. She was seen and treated by at least three physicians and given various medications. Two days after that she was transferred to a third hospital, where she was diagnosed with listeria meningitis. Five hours later she died.

Plaintiffs thereafter filed a wrongful death complaint against defendants, Douglass, the two other hospitals, and various physicians, alleging causes of action for wrongful death based on medical malpractice.

Defendants' motion for summary judgment argued defendants had met the standard of care in treating decedent and none of their acts or omissions had caused or substantially contributed to decedent's death. The motion was supported by three declarations.

Joseph Vinetz, M.D. (Vinetz), an expert in internal medicine and infectious diseases, reviewed decedent's medical records from La Palma and the two other hospitals where she was admitted. He also reviewed several depositions.

He explained decedent went to the La Palma emergency room complaining of a headache with pain at 10 out of a scale of one to 10. Her temperature was 98.3. She

3

had taken Advil and medication for a tension headache. She had not recently traveled outside of the United States. Douglass evaluated her and did not notice stiffness or pain in decedent's neck. She was discharged the next morning in stable condition with reduced pain.

Vinetz opined that, under the standard of care, neither La Palma nor anyone working there was required to take further steps to evaluate or diagnose decedent for the possibility of meningitis because she had no temperature or neck rigidity. In addition, her vital signs were stable and her headache had improved before she was discharged.

Lance Wilcher, an expert in nursing, evaluated the nursing care at La Palma. He reviewed decedent's hospital records from La Palma and another hospital. He also reviewed husband's deposition.

He set out the events as to decedent's visit to La Palma, generally the same as described above. He opined the care by Baca and others at La Palma met the standard of care. Baca properly assessed and documented decedent's complaints, history of the complaints, vital signs, and current condition. Baca and Douglass expeditiously examined decedent. Douglass managed decedent's care. Communications between Douglass and the nurses was suitable. The nurses carried out Douglass's orders, including decedent's discharge. The nurses were not responsible for ordering tests, including blood tests.

Virg Narbutas, the chief executive officer of La Palma, declared all physicians working at La Palma during decedent's stay were neither employees nor agents but were independent contractors.

Plaintiffs' opposition was supported by the three expert declarations the court found were insufficient and which we discuss below.

When the motion first came on for hearing, the court issued a tentative ruling explaining that plaintiffs' expert declarations were inadequate. It generally explained the declarations did not identify which of the defendants violated the duty of

4

care and how their conduct caused decedent's death, specifically pointing out defects in two of the three declarations. It ordered plaintiffs to file supplemental declarations to remedy the deficiencies and continued the hearing.

At the continued hearing, the court found the revised declarations of plaintiffs' three experts were still inadequate. It granted the motion, adopting its tentative ruling as the final order. It ruled the revised declarations were inadmissible because they were speculative, conclusory, and lacked foundation. Thus, there was insufficient evidence to show defendants' acts were below the standard of care and their acts and omissions "were a substantial cause to a reasonable degree of medical probability in causing decedent's death."

More specifically, as to Tengis Riznis, board certified in family medicine and a practicing hospitalist, the court noted his declaration was "universal," responding to motions for summary judgment filed by seven defendants. Those defendants treated decedent at different times in different facilities, including three hospitals, and gave different types of treatment. Riznis "clump[ed]" together the care provided by the seven defendants but did not set out which defendant provided what specific care.

As to the declaration of Ken Corre, a board certified emergency physician, the court stated he too "lumped together" the care by and alleged breaches of La Palma and two other defendants, i.e., Douglass and Emergent Medical Associates.[1] Corre failed to specify which acts of which defendant he claimed were below the standard of care. Instead, he stated "'a number of healthcare providers at La Palma'" documented symptoms. He also failed to explain the actual standard of care each of the medical professionals was required to meet. Finally, Corre failed to show his opinions were based on admissible evidence.

---

[1] Douglass was an independent contractor of Emergent.

5

Regarding the declaration of Cindy Joanne Balch, a registered nurse certified in emergency nursing and critical care, with a certificate in forensic nursing, the court noted her opinions were based on either the opinions of Riznis and Corre or on inadmissible documents, including the Nursing Practice Act and the "JCAHO."[2] Further, although she opined La Palma nurses had violated policies, she did not identify the policies or explain how those claimed violations were a breach of the standard of care. Thus, her opinions lacked proper foundation.

## DISCUSSION

### 1. Introduction

Code of Civil Procedure section 437c, subdivision (c), declares "summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A defendant may bring a motion on the ground there is a complete defense to the action or the plaintiff cannot prove one of the required elements of the case. (Code Civ. Proc., § 437c, subds. (*o*)(2),(p); *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203.) If defendant meets that burden, the burden shifts to the plaintiff to produce evidence there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Caldwell*, at p. 203.)

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. omitted.) "[A] party . . . 'must produce admissible evidence raising a triable issue of fact. [Citation.]' [ Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145.)

---

[2] The declaration did not define JCAHO.

We review a summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 860.) "[W]e liberally construe plaintiff's evidentiary submissions and strictly scrutinize defendant's own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff's favor. [Citation.]" (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64.)

We review rulings on the admissibility of expert declarations for abuse of discretion. (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 187.) "A court abuses its discretion if its ruling is "'so irrational or arbitrary that no reasonable person could agree with it.'" [Citation.]" (*Ibid.*) On appeal it is plaintiffs' burden to show the court's ruling was erroneous. (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 118.)

2. *General Principles of Wrongful Death Claims*

"'The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' [Citation.]" (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.) The negligence must be a substantial factor in causing the death, i.e., it was a "'reasonable medical probability' that the negligence was sufficient of itself to bring about the death, i.e., the death was 'more likely than not' the result of the negligence. [Citation.]" (*Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1499.)

3. *General Principles as to Admissibility of Expert Declarations*

Under Evidence Code section 801 an expert's testimony "is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an

7

opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

"'An expert opinion has no value if its basis is unsound. [Citations.]'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 (*Sargon*).) Under section 801, "'the matter relied on must provide a reasonable basis for the particular opinion offered, and . . . an expert opinion based on speculation or conjecture is inadmissible.' [Citation.]" (*Ibid*.) "'[T]he expert's opinion may not be based "on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors . . . . [¶] Exclusion of expert opinions that rest on guess, surmise or conjecture [citation] is an inherent corollary to the foundational predicate for admission of the expert testimony: will the testimony assist the trier of fact to evaluate the issues it must decide?" [Citation.]' [Citations.]" (*Ibid*.)

Section 802 states, "A witness testifying in the form of an opinion may state . . . the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion." This allows the court to determine "not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning." (*Sargon*, *supra*, 55 Cal.4th at p. 771.)

An expert declaration in opposition to a motion for summary judgment must "establish[] the matters relied upon in expressing the opinion, that the opinion rests on matters of a type reasonably relied upon, and the bases for the opinion. [Citation.]" (*Sanchez v. Hillerich & Bradsby Co*. (2002) 104 Cal.App.4th 703, 718.) In a medical malpractice action, an expert "must be familiar with the standard of care to which the defendant was held. [Citations.]" (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

*4. Exclusion of Declarations of Plaintiffs' Experts*

The trial court found the three declarations of plaintiffs' experts were inadmissible because they lacked foundation and were speculative and conclusory. Without the declarations, it continued, plaintiffs did not provide sufficient evidence to show defendants' acts fell below the standard of care and that their acts and omissions substantially caused decedent's death "to a reasonable degree of medical probability."

We can sympathize with the court's frustration with the expert declarations. They were far from a model of clarity[3] and portions of them did suffer from some of the defects the court noted. However, as noted below, in reading the declarations liberally, as required, there were a few admissible statements sufficient to create a triable issue of fact the nurses at La Palma, including Baca, bore some responsibility for the belated diagnosis. It is an abuse of discretion to refuse to admit an entire declaration when portions are admissible. (See *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 125 [where parts of "'obtuse'" expert declaration sufficient, error to sustain objections].) Where a motion for summary judgment is filed, the court should parse the declarations in opposition finely, even when this takes additional time as it did here.

Reading the admissible portions of the declarations together,[4] they are sufficient to show a triable issue decedent's death was caused by belated diagnosis of

---

[3] In addition, plaintiffs failed to detail this evidence in their briefs, other than quoting large portions of the declarations, which we could read in the record, without any explanation as to why statements in the declarations showed either negligence or causation. We could have considered the arguments forfeited. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure of appellant to provide reasoned legal arguments forfeits issue].) "'It is neither practical nor appropriate for us to comb the record on [a party's] behalf.'" (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.)

[4] In ruling on a motion for summary judgment, we consider all declarations, along with any other admissions or conceded facts, together. (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 639.)

9

bacterial meningitis, leading to delayed treatment with antibiotics that resulted in brain death.

The court ruled Balch's declaration inadmissible because it lacked proper foundation. It found the opinions of Riznis and Corre and the Nursing Practice Act and the JCAHO were insufficient bases for her opinion. In addition, the court stated, Balch failed to identify the policies she claimed La Palma nurses had violated. In our view, however, her experience and qualifications alone were sufficient foundation for the opinions described below.

Among other qualifications listed in her declaration, Balch has been a nurse for more than 44 years, has been a certified critical care nurse since 1989, and a certified emergency nurse since 2007, has experience working in trauma centers and as a triage nurse, and is currently a resource nurse in the four critical care units, including the emergency department, at Eisenhower Medical Center.

Balch stated in her declaration La Palma's nursing staff and Baca failed "to properly assess and re-assess using the required 'nursing process' of patient's continued complaint of a severe headache." Further they did not "recognize the 'severity' of [decedent's] symptoms and then failed to notify the physician of [decedent's] continued pain." Additionally, Baca, who did not discharge decedent, stated decedent "had no pain on discharge" but decedent's husband stated in his declaration decedent's "pain was still so severe, [decedent] was barely able to stand or walk . . . . [H]e took [decedent] to the car by wheelchair and had to physically assist her into the car because she was still in pain, felt no better than when she arrived, she was still vomiting, still with a headache, and could not walk. None of this is documented." Finally, the graduate nurse "failed to inform the physician of [decedent's] 'continued' headache." These statements, founded on Baca's experience and expertise, created a triable issue of fact as to negligence and those portions of her declaration were admissible.

10

The court refused to admit the declarations of Riznis and Corre essentially because they did not distinguish which among the many defendants had provided what specific care. But Riznis did specifically opine the La Palma nurses failed to advise the doctor decedent still had pain at discharge. Riznis also concluded the treatment by La Palma, among other defendants "fell below the standard of care and [was a] substantial factor[] in causing and/or contributing to [decedent's] injuries . . . and her death." Thus, at least these portions of Riznis's declaration should have been admitted, and they are sufficient to raise a triable issue of fact as to causation.

In sum, there are triable issues of fact as to breach of duty and causation and the motion for summary judgment should have been denied.

## DISPOSITION

The judgment is reversed. Plaintiffs are entitled to costs on appeal.

THOMPSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

IKOLA, J.

11